480 P.2d 736

**STATE of Utah, Plaintiff and Respondent,**
v.
**Craig CARLSEN, Defendant and Appellant.**
**No. 11884.**

Supreme Court of Utah.
Feb. 5, 1971.

---

306

Craig Carlsen, pro se.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Craig Carlsen appeals from a conviction of grand larceny of about 800 pounds of dressed meat from the Box Elder Meat Packing plant in Brigham City, Utah. He assigns error in (1) not being informed of and protected in his constitutional rights in connection with the discovery and investigation of the crime; (2) failure of the trial court to admonish witnesses who were excluded from the courtroom during the trial; (3) in the manner of submitting the case to the jury; and (4) frailties in the identification of evidence.

In the early morning (6:55 a. m.) of January 5, 1970, Wallace Bowden arrived at his work at the Salt Lake Sanitation Treatment Plant in the south-west environs of the City. Shortly thereafter, he observed three men (later found to be the defendants Carlsen, Kendrick and James) transferring white packages from a truck to an automobile. They tossed a few of the packages into a ditch nearby. He called the sheriff's office. About 7:30 a. m. Deputy Sheriff Earl Julian arrived. He observed that the packages contained meat and were labeled "Dell Olsen Meat Processing Company" and "Box Elder Meat Packing." To his inquiry as to what they were doing with the meat, the defendant Carlsen answered that he had brought the packages from the Dell Olsen Meat Distributing Company to Salt Lake to sell. After further investigation, which revealed that this story was not true, and that some meat had been stolen from the named packing company, the three were charged with grand larceny. They pleaded not guilty and a trial by jury resulted in a verdict of guilty as to all three. Defendant Carlsen takes this appeal.

As to point (1) above: defendant contends that his constitutional rights were violated because he was entitled to be given the so-called Miranda [1] warning before Officer Julian asked him any questions. It is important to have in mind that these rights came into being as a safeguard against oppressive methods and abuses and that their proper application is to serve that admittedly salutary purpose. But the evils to be guarded against are equaled if not surpassed if the protections of individual rights are so exaggerated as to give licentious protections to criminal conduct and impose such restrictions on peace officers that they cannot do an efficient job of investigating crime.

If it appears that an accused has been in any way abused or imposed upon, unjustly dealt with, or unfairly convicted, the conviction should not be permitted to stand. On the other hand, unless there is something of that character, those rules should

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

not be applied as mere abstractions, apart from their reason for existence, to set free persons plainly guilty of crime.

██ ██ It would be wholly impractical, and the law does not require an officer who is investigating suspicious circumstances to give the "Miranda" warning to everyone of whom he asks a question.[2] The defendant and his associates were doing something which naturally gave rise to suspicion. Inquiry was therefore justified and the answer may well have disclosed some perfectly lawful activity. It is significant that it does not appear that the officer then knew of the larceny at Brigham City, nor that he had any specific crime in mind, nor that the defendant had become the focus of suspicion with respect to any such crime.[3] There had been no arrest or taking in custody,[4] nor any significant deprivation of defendant's freedom.[5] Accordingly the cases relied upon by the defendant have no application to the facts of this case; nor was there any invasion or disregard of his rights to warrant a reversal of his conviction.

As to point (2) above: the exclusion of witnesses from the courtroom, and admonishing them about conversing with one another is governed by our statute, Sec. 77–15–12:

> * * * While a witness is under examination, the magistrate *may* exclude all witnesses who have not been examined. He *may* also cause the witnesses to be kept separate, and to be prevented from conversing with each other until they have all been examined. [Emphasis added.]

Thus there is vested in the trial judge a separate discretion on both whether to exclude the witnesses, and whether he should admonish them to keep apart and not talk to each other.

██ We do not doubt that if there is some reason to exclude the witnesses, it would seem that in most instances the latter admonition should also be given. However, in this case, in addition to the fact that it was discretionary with the trial judge,[6] there are additional reasons why we do not regard the omission of the

---

2. A case analogous in principle is United States v. Gibson, 392 F.2d 373 (4th Cir. 1968), police officer pursued suspected stolen automobile and questioned driver. Held that questions as to ownership and circumstances did not require Miranda warning.

3. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

4. Sec. 77–13–2, U.C.A.1953: "An arrest is made by an actual restraint of the person

of the defendant or by his submission to the custody of an officer."

5. See United States v. Thomas, 396 F.2d 310 (2d Cir. 1968); United States v. Hall, 421 F.2d 540 (2d Cir. 1969); United States v. Browney, 421 F.2d 48 (4th Cir. 1970).

6. See State v. Kendrick, 239 Or. 512, 398 P.2d 471.

admonition as reversible error: (1) there was no request for such an admonition; and (2) there is no indication as to how whatever may have been discussed (which is not shown except in generality) would have had any adverse effect upon the defendant.

■■ As to point (3): defendant attacks his conviction on the ground of variance between the charge as made against him and the proof as to the ownership of the meat in question: that the information stated it belonged to Gary Hill, whereas the evidence showed that it belonged to a partnership of Mr. Hill and a Mr. Grant Thompson. The reason this contention fails is that one who steals property has no standing to question the title of anyone in lawful possession from whom it is taken.[7] The court correctly stated to the jury that:

> * * * The state must establish either that Gary Hill was such owner, or that he had some kind of special ownership or special right of possession.[8]

■ In defendant's point (4) he argues that although Mr. Hill testified that meat was missing from his plant, he could not say exactly the amount thereof nor exactly

when it was taken; and that though Hill saw the meat and his labels thereon in the county jail, it was not proved to be the same meat taken from the defendants by Officer Julian. However, Mr. Hill identified the meat to the best of his ability from the photographs of the packages taken at the scene, and from the observations made of them at the county jail. Any lack of positiveness in his testimony could as well be regarded by the jury as indicating his honesty as it could in discrediting the evidence. In any event, the matter complained of by the defendant goes to the credibility of the State's evidence, and not to its competency. From that evidence, and the inferences that reasonably could be drawn therefrom, the jury could reasonably find, as its verdict indicated that it did: that the meat in question was stolen from the packing plant in Brigham City; that recently after its theft it was found in the possession of the defendant; that he made a false, and therefore ipso facto unsatisfactory, explanation of his possession, which facts justified the verdict of guilty of its theft.[9]

Affirmed. No costs awarded.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

7. See People v. Edwards, 72 Cal.App. 102, 236 P. 944, 950; Borrelli v. State, 453 P.2d 312 (Okl.Cr.1969).

8. See also Sec. 77–21–17, U.C.A.1953, which states with respect to partnership property that: "* * * it is sufficient to refer to or describe such property as belonging to *any one or more of such partners* * * *." (Emphasis added.)

9. Sec. 76–38–1, U.C.A.1953; State v. Potello, 40 Utah 56, 119 P. 1023; State v. Allred, 16 Utah 2d 41, 395 P.2d 535.