STATE of Utah, Plaintiff and Respondent,

v.

Gus William SIMPSON, Defendant
and Appellant.

No. 14004.

Supreme Court of Utah.

Oct. 24, 1975.

Duane A. Frandsen, of Frandsen &
Keller, Price, for defendant-appellant.

Vernon R. Romney, Atty. Gen., Earl
Dorius, Asst. Atty. Gen., Salt Lake City,
for plaintiff-respondent.

CROCKETT, Justice:

Gus William Simpson was found guilty in a trial to the Seventh District Court of illegal possession of a controlled substance (marijuana) with intent to distribute for value.[1] He appeals, assigning as error: (1) that he was interrogated while in custody without being advised of his constitutional rights; [2](2) that the marijuana introduced in evidence had been obtained by an illegal search and seizure; (3) that our Utah court lacked jurisdiction to convict him of the crime of which he was charged.

■ The defendant has followed a pattern that has become all too common in criminal appeals: of assuming that the facts are to be viewed as he sees and states them from his defensive perspective. Whereas, the rule is that the trial court having rejected his version of the facts and found him guilty, this court is obliged to view the evidence, and whatever inferences may be fairly and reasonably drawn therefrom, in accordance with that finding.

On the night of May 15, 1974, at about 2:30 a.m., the defendant landed a small single-engine Cessna airplane at the airport of Blanding, a town in southeastern Utah. Defendant's explanation was that he needed gasoline; drove his plane up to the pumps and, receiving no attention, taxied it out to the far end of the field to await daylight. The reasonableness of this explanation was for the trial court to consider. He was at liberty to reject it as self-serving declarations, or as fabrications, which the defendant regarded as the most plausible excuse he could offer for being caught in those circumstances. The evidence is further that the airport manager observed the airplane and, regarding the movement of the airplane and the conduct of the defendant as unusual and perhaps

suspicious, at about 3:30 a.m. phoned the local police.

The peace officers arrived at the airport at about 4:30 a.m. After driving their car near the defendant's airplane, one of them approached the defendant and asked him for some form of personal identification, such as driver's license, pilot's license, or his airplane registration. He was unable or unwilling to produce anything of that nature. At this point these facts should be noted: The officer's investigation might well have led to the discovery of someone ill or injured being transported to a hospital, or any of a number of night emergency situations an airplane may be involved in. He was at that time making a general inquiry about the unusual circumstances. No gun had been drawn and no show of force or threat of any nature had been made; nothing had been said about an arrest; and the officer did not yet have any definite reason to believe that any crime was being committed.

Pursuing his investigation, the officer asked the defendant if he could look inside the plane to see what it was carrying. The defendant responded by gesturing toward the plane and voluntarily stating that it is "loaded with pot." The officers then informed the defendant that he was under arrest, read him the standard warning concerning his constitutional rights,[3] searched him for weapons and placed him in the patrol car. They then went to the plane. The pilot's door was wide open; and they saw that the plane was tightly stacked from floor to ceiling with plastic bundles containing what from appearance and odor they recognized as marijuana. It was later ascertained to be between 800 and 900 pounds of that substance.

The argument of defense counsel is that the foregoing constituted an "in-custody

---

1. Sec. 58–37–8, U.C.A.1953. "Prohibited acts —(1)(a) it shall be unlawful . . . (ii) To distribute for value or possess with intent to distribute for value a controlled or counterfeit substance;".

2. Utah Const., Art. I, Sec. 12; U.S.Const., Amendment V.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964).

interrogation"; and that the defendant should have been given the warning concerning his constitutional rights before the officer asked if he could look inside the plane; and thus before he made the incriminating statement.

It is uniformly held that when such a general investigation is going on it is not required that a peace officer inform everyone or anyone in sight as to his constitutional rights and warn him against making a voluntary statement.[4] The law, in conformity with common sense and the practicalities of such situations, imposes no such duty, certainly not until the accused at least becomes the focus of suspicion of a crime. Inasmuch as it does not appear that the officers either knew or had any reason to suspect that the defendant was involved in any particular crime until the defendant himself volunteered the statement in question, it does not fall within the ambit of "in-custody interrogation" as dealt with in the cases relied on by the defendant. We see no impropriety in the procedure followed, nor in admitting the evidence.

The defendant's contention that the taking of the marijuana as evidence was an illegal search and seizure is likewise without merit. Preliminarily on this point, this question comes to mind: What difference could it possibly make as to the finding of defendant's guilt or innocence if this evidence had been obtained by an unlawful seizure and therefore had been suppressed? There was abundant evidence that the plane was loaded with marijuana: the officers' visual and olfactory observation; and more important, the defendant's own statement that it was such. There could be no question whatsoever about the

fact. And beyond this, as expressly found by the trial court, the marijuana was in plain view. There was thus no need for any search. Consequently, there was no need for any search warrant.[5]

The argument made on defendant's behalf that the Utah court lacked jurisdiction to convict him is grounded upon the claim that there is no evidence that he intended to distribute the marijuana *for value in Utah,* but was transporting it to Idaho. These observations are pertinent: As to his intent to *distribute for value:* among the inferences to be drawn are these: that he was going to smoke the whole 900 pounds himself, give it away, or deliver it to someone else for value.[6] It seems fatuous to ask which is the more reasonable. As to his intent *to distribute in Utah:* the statute upon which he was charged and convicted does not so require. All it requires is that he have possession with the intent to distribute for value.[7] Supplementing this, Sec. 76–1–201(1)(a), U.C.A.1953, provides that a person may be prosecuted in this State for any offense which "is committed either wholly or partly within the state . . ." and subsection (2) thereof further provides that an offense is committed partly within this State if any element constituting the offense occurs therein.

Finally, and in accordance with what has been said above, the trial court was not obliged to believe defendant's story that he did not intend to deliver the marijuana in Utah but in Idaho. He, of course, had no bill of lading; he had filed no flight plan; and there is no evidence whatsoever to support his contention other than his self-exculpatory statement.[8]

4. See *State v. Bennett,* 30 Utah 2d 343, 517 P.2d 1029 (1973); *State v. Carlsen,* 25 Utah 2d 305, 480 P.2d 736 (1971); 10 A.L.R. 3d 1054; 31 A.L.R.3d 565.

5. See *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *State v. Martinez,* 28 Utah 2d 80, 498 P.2d 651 (1972); *State v. Allred,* 16 Utah 2d 41, 395

P.2d 535 (1964), 68 Am.Jur.2d 655, Sec. 23 and Sec. 88.

6. See *State v. Bankhead,* 30 Utah 2d 135, 514 P.2d 800 (1973).

7. See footnote 1 above.

8. That self-interest may be regarded as important factor in judging credibility of testi-

The defendant's attacks upon his conviction being without merit, his conviction is affirmed.

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

mony, see *Moore v. Prudential Insurance Company of America,* 26 Utah 2d 430, 491 P.2d 227 (1971) ; *Jensen v. Logan City,* 96 Utah 522, 88 P.2d 459 (1939).