570 P.2d 508

**The STATE of Arizona, Appellant,**

v.

**David KENNEDY and Tennis Kennedy, Appellees.**

**No. 2 CA–CR 959.**

Court of Appeals of Arizona, Division 2.

May 6, 1977.

Rehearing Denied July 11, 1977.

Review Denied Sept. 15, 1977.

Bruce E. Babbitt, Atty. Gen., Phoenix, Stephen D. Neely, Pima County Atty. by David R. Cole, Deputy County Atty., Tucson, for appellant.

Stolkin, Weiss & Tandy by Stephen M. Weiss, Tucson, for appellee David Kennedy.

Scholl & Kurlander by William L. Scholl, Tucson, for appellee Tennis Kennedy.

## OPINION

HOWARD, Chief Judge.

The state appeals from the granting of appellees' motion to suppress certain statements made by appellees just prior to the time they were arrested for attempted murder and conspiracy to commit murder.

The record shows that appellees had hired a former employee, Leo Beisler, to murder their partner, Tony Rodriquez, so that they could gain complete ownership of the partnership business, Kenler Pest Control. The plan was that Beisler was to use a ruse to gain entrance to the Rodriguez residence where he was to murder both Rodriguez and his wife.

Beisler contacted an assistant Pima County Public Defender and after explaining his involvement was taken to the Pima County Attorney's office. The police equipped him with an electronic listening device and he succeeded in recording an incriminating conversation with appellees. At that time it was mentioned that the murders were to take place at 10:00 p. m. on May 3, 1976. To provide appellees with an alibi, they were going to give a party on the night of May 3rd. On May 3rd Beisler was again "bugged". He went to appellees' apartment where the plan was further discussed. This conversation was monitored by Detective Marmion of the Tucson Police Department and several other detectives.

At about 10 o'clock on the evening of May 3rd, Det. Marmion and Sgt. Bunting approached the Kennedys in the pool area at their apartment complex where they had gone for the purpose of arresting the appellees. The detectives were not in uniform. There were backup officers and units in the area but they were not visible from the pool.

The two detectives told the Kennedys that Mr. and Mrs. Rodriguez had been murdered and that a man had been seen running from the residence. The statements were not true and were made in order to see how the Kennedys would react and what kind of story they would tell the detectives. Neither Kennedy had been advised of his "Miranda Rights". At no time was there any discussion involving a possible trip to the police station. In fact, Det. Marmion told the Kennedys that he would attempt to make telephone contact with them the next day to find out if they had any idea who might have committed the murders. The conversation between the detectives and the Kennedys took place in the immediate vicinity of the pool and other individuals were in the area. A few minutes after the interview appellees were arrested.

A motion to suppress the conversation at the poolside was granted although the trial judge indicated that in the light of the evidence the appellees could not have believed that they were in custody prior to the time they were actually arrested.

Appellees contend that under Arizona law the "Miranda warning" must be given if the police have probable cause to arrest the defendant. In support of this proposition they cite the following cases: *State v. Melot,* 108 Ariz. 527, 502 P.2d 1346 (1972); *State v. Mumbaugh,* 107 Ariz. 589, 491 P.2d 443 (1971); *State v. Thomas,* 104 Ariz. 408, 454 P.2d 153 (1969); and *State v. Tellez,* 6 Ariz.App. 251, 431 P.2d 691 (1967). We do not agree. The "*Miranda* warning" is required to be given prior to *custodial interrogation* which is defined as questioning initiated by law enforcement officers

after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Bainch,* 109 Ariz. 77, 505 P.2d 248 (1973). The danger of custodial interrogation is intimidation either mental or physical. *State v. Tellez,* supra. The most the cases cited by appellees stand for is that the existence of probable cause is one factor, to be considered with the rest of the circumstances, in determining whether or not there was custodial interrogation. The existence of probable cause does not in and of itself trigger the necessity to give a *Miranda* warning. *United States v. Harris,* 528 F.2d 914 (4th Cir. 1975). Custody is the crucial issue in determining whether such warning is necessary. As stated in *State v. Bainch,* supra:

> ". . . The vital point is whether, examining all the circumstances, the defendant was deprived of his freedom of action in any significant manner, and the defendant was aware of such restraint. In the latter instance the *Miranda* warnings are required to be given before the statements of the defendant may be received in evidence against him." 109 Ariz. at 79, 505 P.2d at 250.

Custody is an objective condition. The subjective intent of the interrogator to arrest the suspect is not, in itself, a sufficient basis upon which to conclude that custody exists. *People v. Kelley,* 66 Cal.2d 232, 57 Cal.Rptr. 363, 424 P.2d 947 (1967). When an arrest has not yet taken place, the factors to be considered in deciding whether the custody has attached are many. Among the most important are (1) the site of the interrogation; (2) whether the investigation has focused on the suspect; (3) whether the objective indicia of arrest are present; and (4) the length and form of the interrogation. *People v. Herdan,* 42 Cal. App.3d 300, 116 Cal.Rptr. 641 (1974).

Under the facts here, there was no custodial interrogation and the *Miranda* warning was not necessary.

Nor are appellees' statements made at poolside inadmissible on the grounds that they were induced by fraud or trickery. A statement induced by fraud or trickery is not made involuntary unless there is additional evidence indicating that the defendant's will is overborne or that the confession was false or unreliable. *State v. Winters,* 27 Ariz.App. 508, 556 P.2d 809 (1976). There was no evidence here of threats, promises or physical coercion which in addition to the uncontroverted deception would indicate an involuntary waiver by appellees of their Fifth Amendment rights. The totality of the circumstances indicates that their will was not overborne by the police deception to a degree sufficient to render their statements false or unreliable.

The order granting the motion to suppress is vacated and set aside.

HATHAWAY and RICHMOND, JJ., concur.