The STATE of Utah, Plaintiff and Respondent,

v.

Ronald John MARTINEZ, Defendant and Appellant.

No. 15744.

Supreme Court of Utah.

May 11, 1979.

---

42. Utah, 526 P.2d 926, 928 (1974).

Phil L. Hansen of Hansen & Hansen, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Theodore L. Cannon, Salt Lake County Atty., Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Defendant Ronald Martinez appeals from a jury conviction of unlawful possession of a controlled substance (heroin) with intent to distribute for value.[1] He assigns error in admitting evidence of statements made by him when he had not been properly informed of and protected in his constitutional rights.

On July 18, 1977, at about 7:30 p. m., the defendant was driving east on 3900 South at about 900 West in Salt Lake City when he was stopped by Salt Lake County Deputy Sheriffs Michael George and Randall Anderson. The deputies advised the defendant of his constitutional rights and informed him that they had a warrant to

---

1. In violation of Sec. 58-37-8(1)(a)(ii) U.C.A., 1953.

search his person and residence.[2] The officers searched the defendant and told him that they were going to his residence to search it. They also told him that he could come along and let them into the home, but if he did not, they would use force to gain access to his residence.

The defendant accompanied the two officers to his residence, a mobile home located at 1158 Warbler in Salt Lake City, where they met other narcotic officers. The officers conducted a search and discovered a container of heroin, and various items used in handling and purveying such drugs including, a blender, a quarter teaspoon measure, an aluminum funnel, a package of toy balloons, a strainer, and two packages of lactose.

Following the search, at about 8:00 p. m. the defendant was placed under arrest and taken into custody. Deputy George testified:

I again asked him if he understood his *Miranda* rights, as I had read them to him before. He stated yes, I do understand them. I asked him if he would mind answering a few questions. He stated no, that he would answer a few questions to me.

The defendant answered the five or six questions posed to him by the officers and then volunteered, "Yeah, I deal dope, but I sold my last bag last night."

The basis of the defendant's contention that his constitutional rights were violated is that even though he had been advised of his rights when first accosted by the officers, he was entitled to a renewed warning of such rights after he was formally placed under arrest at about 8:00 p. m.; and he couples with this the assertion that the officers failed to tell him that while under custodial interrogation he could cease answering questions or making statements at any time.

In analyzing these contentions, it is important to have in mind the origin and purpose of those rights. They came into being as a safeguard against oppressive methods and abuses by which innocent persons were imposed on and sometimes unjustly convicted and punished. We have no desire to pursue a policy which is anything less than a zealous respect for those rights. But neither their purpose, nor the safeguarding of the peace and good order of society are served if the protection of individual rights is so distorted as to give irresponsible protections to criminal conduct and impose such restrictions on peace officers that they are thwarted in their efforts to combat crime.

If it appears that an accused has been in any way abused or unfairly dealt with, so that there is any reasonable doubt that he was justly convicted, the conviction should not be permitted to stand. On the other hand, unless there is something of that character, these salutary protections of law should not be so perverted as to permit guilty persons to escape conviction.[3]

We have no disposition to disagree with the proposition that the status of being in custody exists when any words or action of the police can reasonably be construed as placing the subject under some substantial physical or psychological control or restraint; [4] and that when this occurs, he is entitled to the "*Miranda* warning." That being so, in this case we can see no useful purpose to be served by being concerned about the nicety of distinction as to whether the defendant was merely placed in a "coercive environment" at 7:30 when the officers first stopped his car, or whether he was technically under arrest at that time, or whether this did not occur until the officers finally so stated to him after finding the heroin at his residence.

In whatever status the defendant should be regarded as being in, the so-called "*Miranda* warning" of his rights was given him and the law should demand no such

---

2. By giving him what they refer to as "the *Miranda* Warning" derived from *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

3. *State v. Carlsen*, 25 Utah 2d 305, 480 P.2d 736.

4. *State v. Paz*, 31 Or.App. 851, 572 P.2d 1036, citing *State v. Evans*, 241 Or. 567, 407 P.2d 621.

useless formality as the repetition of such rights a half hour later in the same continuous sequence of events, even if there had occurred a technical change of his status.[5]

What has just been said also has application to the defendant's final point, that the officers failed to tell him after his arrest that he could cease at any time to answer questions. It is not to be doubted that when one being investigated for crime has been advised of his rights and has chosen to answer questions, it is his privilege at any time to change his mind and remain silent if he desires to do so.[6] Nevertheless, under the evidence here, the trial court was justified in its conclusion that there was no violation of the defendant's constitutional rights, nor any unfairness of any nature imposed upon him, because after he had been given adequate warning of his rights, he voluntarily made the incriminating statements about which he complains of as being used in evidence against him.

We have found no merit in the defendant's contentions. The verdict and judgment are affirmed. No costs are awarded.

WILKINS, HALL and STEWART, JJ., concur.

MAUGHAN, J., concurs in result.

---

**5.** See *State v. Pyle*, 216 Kan. 423, 532 P.2d 1309.

**6.** See *Miranda v. Arizona*, footnote 2 above.