638 P.2d 732

The STATE of Arizona, Appellee,

v.

Eulalia RIFFLE, Appellant.

No. 2 CA–CR 2269.

Court of Appeals of Arizona,
Division 2.

Sept. 23, 1981.

Rehearing Denied Nov. 5, 1981.

Review Denied Dec. 8, 1981.

## 66

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Peter B. Keller and Nancy Grey Postero, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

On April 16, 1980, appellant's three-month-old daughter, Merida, died from severe brain injuries. Appellant's husband was later convicted of negligent homicide as a result of his role in causing the child's death. Appellant was charged in a separate indictment with child abuse, as defined in A.R.S. § 13–3623. She was convicted of negligent child abuse under circumstances not likely to produce death or serious physical injury, a class 6 felony, A.R.S. § 13–3623(C)(3), and was sentenced to a term of 0.75 years imprisonment. She appeals both the conviction and the sentence.

The evidence admitted at trial included statements that appellant made to police officers investigating Merida's death. Appellant contends that these statements, which were obtained without benefit of *Miranda*[1] warnings, should have been suppressed.

Immediately before trial, the court conducted a hearing on appellant's motion to suppress those statements. Testimony indicated that appellant took her child to the county hospital emergency room sometime near mid-morning on April 16. While the child was being treated in the "trauma room," appellant was ushered into a "patient care room" immediately across the hall. A nurse from the hospital testified that this was normal practice, designed to ensure that the mother could be advised of the child's condition, could be reached for information needed in treatment, and could be given emotional support from the hospital staff. The nurse admitted that she suspected child abuse, but denied that appellant was placed in the room to be held for questioning.

The hospital staff became increasingly suspicious when appellant, in apparent reference to her husband, began screaming, "I am going to kill the son-of-a-bitch!" Pursuant to A.R.S. § 13–3620[2] and established hospital policy, a staff member notified police of the child's injuries and subsequent death. Fearing that appellant might attempt to carry out her threat against her husband, who was believed to be outside looking for a parking place, the nurse also summoned a private security guard employed by the county hospital. The guard was instructed to stay near appellant, but did not confine her to the room. Appellant, accompanied by the guard, went in and out of the hospital several times and was free to come and go as she pleased.

Soon after the child's death a uniformed police officer responded to the hospital's call. His arrival was quickly followed by

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The statute requires that the hospital or physician notify police where child abuse is suspected.

that of two detectives. The detectives questioned appellant about the child's injuries. Before beginning the questioning they asked appellant if she would voluntarily answer questions, but did not give *Miranda* warnings. Appellant consented to questioning and gave the statements that have become the subject of this appeal. The interview lasted about twenty minutes. Thereafter, appellant was allowed to leave the hospital. She was arrested the following day.

The detectives testified that they did not suspect appellant of any active involvement in the child's death at the time of the questioning. One detective stated that he became vaguely aware that "something was not right" during the interview, but that he was not certain whether appellant's statements were incriminating until he reviewed them with a deputy county attorney later in the day, and examined the statute under which appellant was later charged.

After hearing this testimony, the trial court found that appellant's statements were not the product of "custodial interrogation," and were therefore admissible despite the absence of *Miranda* warnings. *See, e.g., State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040 (1977). We will not disturb that finding on appeal unless it appears to be clear and manifest error. *State v. Garrison,* 120 Ariz. 255, 585 P.2d 563 (1978).

In *State v. Kennedy,* 116 Ariz. 566, 570 P.2d 508 (App.1977), this court listed four factors considered to be among the most important in determining whether an accused, who has not been formally arrested, is in custody when questioned by police. Those factors are 1) the site of the interrogation, 2) whether the investigation has focused on the accused, 3) whether the objective indicia of arrest are present, and 4) the length and form of the interrogation. 116 Ariz. at 569, 570 P.2d at 511, citing *People v. Herdan,* 42 Cal.App.3d 300, 116 Cal.Rptr. 641 (1974).

Directing our attention to the first of these factors, appellant contends that the

hospital emergency room was a "coercive environment." Though a contrary finding would not be clearly erroneous, we agree that the unfamiliar surroundings and emotionally charged atmosphere might have been capable of exerting some coercive influence. That fact alone, however, does not require the giving of *Miranda* warnings. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. Garrison, supra.* The evidence contains no support for appellant's claim that the remaining factors enumerated in *Kennedy* were present. There was ample evidence that the investigation was focused on appellant's husband, not on appellant. There were none of the usual indicia of arrest—no handcuffs, no locked doors, no drawn guns, no search of appellant's person or belongings. The questioning was of surprisingly short duration and was, from all indications, neutral and non-accusatory in nature. At least three of the four *Kennedy* factors, therefore, strongly support the trial court's finding.

Additional support for that finding is found in appellant's own testimony at the suppression hearing, where the following exchange took place:

"Q (by defense counsel) Did they tell you that you were suspected of anything?

A No way I was suspected of anything."

Moments later, appellant gave the following testimony:

"Q Okay. Did you suspect that you were going to be charged with anything when you were talking to those two officers?

A No.

Q If you had known you would have been charged would you have spoken to them voluntarily?

A No."

Discussing the present issue in *State v. Bainch,* 109 Ariz. 77, 505 P.2d 248 (1973), our supreme court stated:

"The vital point is whether, examining all the circumstances, the defendant was deprived of his freedom of action in any significant manner, *and the defendant*

**68**

*was aware of such restraint.* In the latter instance the *Miranda* warnings are required to be given before the statements of the defendant may be received in evidence against him." 109 Ariz at 79, 505 P.2d at 250 (emphasis added)

Appellant's own testimony indicates that she did not believe she was in custody. The trial court correctly ruled that *Miranda* warnings were not required.

■ Appellant further asserts, regardless of *Miranda,* that her statements were given involuntarily and should have been suppressed for that reason. This claim finds no support in the record. The final question and answer set forth above seem to contain a tacit admission that appellant voluntarily spoke to the detectives. Though appellant was distraught at the death of her daughter, there was evidence that she understood the detectives' questions and answered them freely and clearly. There was no evidence of threats, promises of reward, physical coercion, or deception. Appellant's claim that one of the detectives admitted to exploiting her distressed emotional state misconstrues that officer's testimony, in which he stated:

> "Well, my main intent was while she was there and in a frame of mind to talk to me, I wanted to get as much information about what her husband had done, because in past experience I found that often husband and wives will not want to incriminate their spouses later on, but at that moment I figured I could get as much information about him from her as I could to use against him later on."

We see no evidence of coercion.

■ Appellant's final claim is that she should not have received a prison sentence. The trial court adequately explained its reasons for the sentence, including the fact that a child had died as a result of negligence for which appellant showed very little remorse, and imposed the minimum legal term of imprisonment. We find no error.

The conviction and sentence are affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.