The STATE of Utah, Plaintiff
and Respondent,

v.

James Wes SHUMAN, Defendant
and Appellant.

No. 17585.

Supreme Court of Utah.

Dec. 8, 1981.

5. Rule 12(b)(6), U.R.C.P.

Harry E. Snow, Paul W. Mortensen, Moab, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Craig Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

A jury convicted defendant of second degree murder, U.C.A., 1953, § 76–5–203(1)(a). This appeal concerns the admissibility of evidence at the trial.

On August 9, 1980, at about 9:30 in the morning, defendant telephoned his probation officer and told him that he thought he might have killed someone but wasn't sure. The probation officer, and later a sheriff's deputy, went to defendant's apartment in Moab to investigate the situation. A car registered to defendant's companion of the previous evening, Sherry Johnson, was parked outside his apartment, but none of the three men could find any evidence to confirm defendant's expressed fear, and defendant said he was unable to recall the events of the preceding evening. When contacted by the officers, Sherry Johnson's family stated that she had not been home since the previous day, which was unusual behavior for her, but they suggested that she might have spent the night with a friend.

At about 10:30 a. m., the two officers departed, leaving defendant at his apartment. Shortly after noon, the deputy returned and asked if defendant would come to the sheriff's office to look into the matter a little further. Replying that this would be "no problem," defendant accompanied the deputy to the sheriff's office. There, in response to a question, defendant told the sheriff that he and Sherry Johnson had left the lounge where they had met, had gone to his apartment, and were "messing around." He also said that they had argued, that Sherry had slapped him, that he had gotten mad, and, though he couldn't remember what subsequently happened, he was afraid of what he had done or might have done to her.

The sheriff then contacted a psychologist and requested that he come to the office and interview defendant and help him regain his memory. The sheriff related what defendant had told him and asked the psychologist to talk to defendant and see if he could make any sense out of his story.

Further investigation of the premises revealed no clues to the puzzling situation. Early in the afternoon, defendant's roommate reported that at about 3:00 a. m. that morning he had been asleep on the couch when defendant and Sherry Johnson arrived at the apartment. The roommate observed defendant and Sherry go into the bedroom. He heard slaps, and later heard Sherry Johnson say she could not breathe. Before he fell asleep, he saw defendant walk naked to a closet area and then return to the bedroom. The roommate also told law officers that defendant had access to his car, that his car doors had been unlocked during the night, and that he couldn't account for approximately ten to twenty miles showing on his car's odometer.

At 4:00 p. m., while defendant was still at the sheriff's office and after his conversation with the psychologist, defendant was advised of his *Miranda* rights. Within an hour thereafter, in response to the sheriff's request that he help them find Sherry Johnson, defendant confessed to the officers that he had killed Sherry Johnson and told them where to find her body. The body was found in a nearby canyon and positively identified as that of Sherry Johnson. Defendant was advised that he would be charged with second degree murder. Two days later, on August 11, 1980, defendant was interviewed by another deputy. After he was advised of his rights, defendant gave the deputy a much more complete statement of the events of the night of the homicide.

■ Prior to trial, defendant moved to suppress all statements given by, and all evidence obtained from, the probation officer, the sheriff, and the deputy on the grounds that he had not been advised of his constitutional rights. His first argument on this appeal is that the trial court committed reversible error in denying that motion to suppress since he had not been read his *Miranda* rights early in the day. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda,* a person in custody must be informed of his right to remain silent prior to interrogation. That warning is a prerequisite to the admissibility of any statement made by a defendant during custodial interrogation.

■ *Miranda* is not controlling here because the defendant was not "in custody" prior to being read his rights at about 4:00 p. m. That defendant was not in custody at his own apartment before 10:30 is obvious from the fact that the officers left him there unrestrained when they departed. When defendant willingly accompanied the deputy to the sheriff's office and while he remained there to speak with the sheriff and the psychologist, he was not in custody because he had not been placed under arrest or given any indication that he would have been compelled to go if he had resisted or been restrained from leaving if he had desired. Indeed, through the entire period prior to about 4:00 p. m. there was no concrete evidence that any crime had been committed. The sheriff's subsequent statement that he would not have permitted defendant to leave after 2:30 p. m. does not establish that defendant was in custody since the sheriff did not communicate that fact to defendant or to anyone else at that time.

■ Since *Miranda* warnings are required only where a person has been taken into custody or otherwise deprived of his freedom in a significant way, and in this case defendant was not in custody or deprived of his freedom in that manner prior to being read his *Miranda* rights, the district court was correct in refusing to suppress evidence obtained before defendant's rights were read. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *State v. Meinhardt,* Utah, 617 P.2d 355 (1980); *State v. Bower,* 73 Wash.2d 634, 440 P.2d 167, 173–74 (1968).

Defendant's second argument is that his confession (made after his *Miranda* rights had been read) should have been excluded because it was not the product of a rational intellect and free will. Defendant bases this argument on his discussions with the psychologist and the effects of a trance the psychologist attempted to induce at about 2:30 or 3:00 p. m. on August 9th, during an hour he spent alone with defendant.

There was no evidence of any statements defendant made during the short period when he was supposed to be in a trance, and there was no follow-up to the supposed trance, since defendant refused the psychologist's offer to try to induce a second trance later in the afternoon when the two were just speaking generally about defendant's background. Even though the psychologist suggested to defendant that his unconscious mind knew what had happened, there is no indication that the psychologist's questioning was coercive or that his queries or even his attempts to aid defendant's recall precipitated the eventual confession. Indeed, after the psychologist had finished interviewing the defendant some time prior to 4:00 p. m., there was no more evidence of crime than there had been at the time he commenced. (The psychologist advised the sheriff that his interview had been inconclusive.) And there is no evidence that defendant was other than entirely alert and in full possession of his faculties at the time he made his confession, which was approximately two hours after defendant's experience with the trance or the alleged trance.

The trial court's conclusion that an accused's confession was voluntarily made and admissible will not be overturned unless it is clearly shown to have been erroneous in the sense that there was no substantial evidence to support it or that in other respects its admission was an abuse of discretion. *State v. Winkle*, Utah, 535 P.2d 82 (1975); *State v. Allen*, 29 Utah 2d 88, 505 P.2d 302 (1973); *State v. Ashdown*, 5 Utah 2d 59, 296 P.2d 726 (1956), aff'd, 357 U.S. 426, 78 S.Ct. 1354, 2 L.Ed.2d 1443 (1958).

There is no such showing on the facts of this case.

Affirmed.

HALL, C. J., STEWART and HOWE, JJ., and G. HAL TAYLOR, District Judge, concur.