**SALT LAKE CITY, Plaintiff and Respondent,**

v.

**Steven R. CARNER, Defendant and Appellant.**

No. 18587.

Supreme Court of Utah.

April 29, 1983.

Ronald J. Yengich, Earl G. Xaiz, Salt Lake City, for defendant and appellant.

Roger F. Cutler, City Atty., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant was charged with driving under the influence of alcohol and improper lane change, both in violation of the Revised Ordinances of Salt Lake City. A circuit court judge dismissed the charges on the ground that the defendant had taken certain field sobriety tests in violation of his right against self-incrimination afforded by Article I, Section 12 of the Utah Constitution. On appeal to the district court, a district court judge in a memorandum decision, reversed the ruling of the circuit court and remanded the case for further proceedings. Defendant appeals to this court seeking the reversal of the district court's decision and a reinstatement of the circuit court's ruling.

The facts are undisputed. In the early morning hours of July 18, 1980 a Salt Lake City police officer saw the defendant driving a red Datsun in the area of Tenth West and North Temple. He observed defendant's car cross the center line of the street three separate times while travelling approximately one block. After defendant's car made a sweeping left turn, the officer pulled him over. Upon approaching the car, the officer smelled an odor of alcohol coming from the car's interior. In talking to the defendant, the officer noticed that his speech was slurred. The officer asked the defendant to get out of the car and requested that he perform some field sobriety tests. He verbally agreed to the tests. Also, when instructed on how to perform the heel-to-toe test, the finger count test, the hand slap test, and the balance test he attempted to comply with each separate request. However, he was unable to effectively perform any of those tests. Based upon his observations of the driving pattern, field sobriety tests, the odor, and defendant's speech, the officer formed the opinion that the defendant was intoxicated to the point that it impaired his driving. He arrested defendant, advised him of the implied consent law, and asked him if he would take a breathalyzer test. The defendant agreed and the test was administered by another officer who observed the defendant and who also formed the opinion that he was under the influence of alcohol.

At trial, the breathalyzer test result of 0.14% blood alcohol was admitted into evidence without objection. (This result was .06% above the .08% which is the statutory presumptive threshold for driving under the influence). However, defense counsel moved that the results of defendant's performance of the field sobriety tests be suppressed since he was not given a *Miranda* warning in violation of this state's constitutional guarantee against self-incrimination. Apparently under the fruit of the poisonous tree doctrine, but without comment, the circuit court granted the motion and dismissed all charges against defendant.

Article 1, Section 12 of the Utah Constitution states:

> The accused shall not be compelled to give evidence against himself . . .

Defendant contends that performing field sobriety tests constituted giving evidence against himself, as defined in *Hansen v. Owens,* Utah, 619 P.2d 315 (1980).[1] He also

---

1. Although stating that the case was limited to its facts, this Court there held that the language

of our constitution is broader than that of the federal constitution which uses the wording

contends that at the time he was asked to perform the tests he was in custody, or otherwise significantly deprived of his freedom, and thereby "compelled" to give evidence against himself. The first contention is premised upon the second since there is no violation of constitutional rights if one *voluntarily* gives evidence against oneself. We shall therefore turn to a consideration of defendant's second contention.

The basis for defendant's contention that he was "compelled" to give evidence against himself is that he agreed to perform and did perform the field sobriety tests under "some substantial physical or psychological control or restraint." In *State v. Martinez,* Utah, 595 P.2d 897, 899 (1979), we held such restraint requires that a person be advised of his *Miranda* rights.[2] Since he was not so advised, defendant argues that he did not knowingly and voluntarily waive those rights. The implication is that he did not voluntarily perform the field sobriety tests but was compelled to do so.

The dictum upon which defendant relies in *State v. Martinez,* supra, was written in the context of an affirmance of a conviction for possession of a controlled substance where the accused unsuccessfully contended that his *Miranda* rights should have been repeated within one-half hour of their first explication even though the sequence of events was continuous. The facts of that case do not offer a guide for what is "substantial physical or psychological control." Similarly distinguishable from the case before us is the language "detained in any significant way" found in *State v. Ruggeri,* 19 Utah 2d 216, 429 P.2d 969 (1967), which was uttered in the context of a grand jury proceeding and concerned testimonial evidence. More helpful is *State v. Carlsen,* 25 Utah 2d 305, 480 P.2d 736 (1971), where this Court held that an officer could, without giving a *Miranda* warning, investigate suspicious circumstances surrounding the dis-

posal of meat taken from a packing company. We stated:

> It would be wholly impractical and the law does not require an officer who is investigating suspicious circumstances to give the "*Miranda*" warning to everyone of whom he asks a question.

*Id.* 25 Utah 2d at 308, 480 P.2d 737. Similarly, in *State v. Abbott,* 21 Utah 2d 307, 445 P.2d 142 (1968), we held that a prisoner was not entitled to a *Miranda* warning prior to his engaging in a very short dialogue with the captain of the guards in which the prisoner was asked whether a knife, which he handed the captain shortly after another prisoner was stabbed, belonged to the prisoner.

■ It has been widely held that temporary detention for the purpose of investigating alleged traffic violations is not synonymous with in-custody interrogation which requires a *Miranda* warning. *State v. Gray,* 3 Wash.App. 146, 473 P.2d 189 (1970); *State v. Tellez,* 6 Ariz.App. 251, 431 P.2d 691, 25 A.L.R.3d 1063 (1967). See generally Annot., 31 A.L.R.3d 565 (1970). An accused must be apprised of his *Miranda* rights if the setting is custodial or accusatory rather than investigatory. In other words, at the point the environment becomes custodial or accusatory, a police officer's questions must be prefaced with a *Miranda* warning. However, for the purpose of determining whether a crime has been committed, investigation and interview are critical; under such circumstances, the warning is not required. Annot., 25 A.L.R.3d 1076 (1969); *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *State v. Carlsen,* supra.

Illustrative of the above rule is *State v. Tellez,* supra. There two police officers stopped the defendant driver for weaving back and forth across the double center line of the street. The officers directed the

---

that an accused shall not "be a witness against himself."

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1964), held that an accused person in custody must be advised, prior to the time a statement is taken,

that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that an attorney will be provided for him if he cannot afford to have one.

defendant to get out of his car and they proceeded to question him. The defendant admitted that the car he was driving was his and that he had been taking drugs. The officers told him to remove his coat and to roll up his sleeves, whereupon they observed a fresh puncture mark in the bend of each arm. The court observed that the formal arrest is not an adequate dividing line to use as a rule to determine when the warnings of constitutional rights must be given after a suspect has been stopped, since the temptation would be too great for officers to postpone formal arrest until a full questioning was completed. Instead, the court opted for the rule that the *Miranda* warning need not be given until police have both reasonable grounds to believe that a crime has been committed and also reasonable grounds to believe that the defendant committed it. Said the court:

> We believe that the point where the warning must be given is when the two generally coincide, for from that point forward the police can be expected to pursue the case against the defendant with vigor. The police must have focused generally upon the crime so that they would have cause for arrest without a warrant. When the offense is a misdemeanor the crime must be committed in the presence of the officer. A.R.S., § 13–1403, subsection 1. The time for caution is when the arrest could be made. Everything prior to that time may be considered "the general on the scene questioning" which is permissible under *Miranda.* The officers smelled defendant's breath and looked at his arms. This was part of the investigation for determining if a crime had been committed. Questions asked at this time would also be investigative. Without such questions and answers, the police would be limited in knowing whether a person was drunk, a narcotics addict, diabetic, victim of an illness, or under the influence of medication or non-narcotic drugs.

6 Ariz.App. 256, 431 P.2d 696, 25 A.L.R.3d 1071. The test suggested by the court in that case comports with our decision of *State v. Shuman,* Utah, 639 P.2d 155 (1981) which held that a *Miranda* warning was not necessary when police were investigating whether a crime had been committed at all.

In *Riddle v. State,* Okl.Cr., 506 P.2d 1405 (1973), a defendant was held not to be entitled to a warning of his constitutional rights prior to performing the coordination tests which led to his arrest for the offense of public drunk. The court determined that the requests made by the police officer were non-custodial in nature. We find the instant case to be comparable to that case. The field sobriety tests here, like the coordination tests there, were not requested in a custodial setting.

█ The court in *State v. Riffle,* 131 Ariz. 65, 638 P.2d 732 (1981), restated four of the most important factors in determining whether an accused who has not been formally arrested is in custody. They are: (1) the site of interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation. Applying that test to the instant case, the field sobriety tests were requested and taken on a public street. Moreover, no indicia of arrest such as readied handcuffs, locked doors or drawn guns were present when the officer asked the defendant to perform the field sobriety tests. Also, the length of the performance of the tests was only minutes, a relatively short period of time. These factors do not suggest a custodial setting. The environment may have been authoritative but it certainly was not coercive or compelling.

It is true that the investigation had focused on the accused. However, that was true at the point of initial observation; and, no one would argue that a *Miranda* warning was obligatory at that point. Unlike many crimes where the identity of the criminal is in question, usually in the crime of driving under the influence, not the identity but the fact of commission is questioned. In such a case, an investigation cannot become accusatory until there is a likelihood that a crime has been committed. Perhaps a heavy emphasis on the factor of whether

the investigation is focused on the accused is justified where identity is the question. However, in view of the nature of the crime of driving under the influence and the lack of other custodial factors here, heavy reliance on the sole factor of upon whom the investigation was focused is not warranted.

The officer was still in the investigatory stage when he asked the defendant to perform field sobriety tests. If the defendant's ability to drive a vehicle had not been impaired or was impaired for a reason other than being under the influence, there may have been no crime committed. Therefore, the officer in requesting field sobriety tests, was continuing to ascertain whether a crime had been committed at all. As soon as the officer determined that the defendant's driving appeared to be impaired due to alcohol, he did arrest him. Until that time the officer was entitled to investigate circumstances at the scene without giving the defendant a *Miranda* warning.

Since the defendant was not in custody, or otherwise significantly deprived of his freedom, custody did not compel him to take field sobriety tests. And, nothing suggests that he was compelled in any other way. Defendant was requested and he agreed, both verbally and by attempts at compliance, to perform the field sobriety tests. No facts indicate that he was forced, coerced or intimidated into performing them. Rather, it appears that he performed them voluntarily. We therefore hold that the defendant was not "compelled to give evidence against himself" in violation of our state constitution. As a result, we do not reach the question whether the taking of field sobriety tests constitutes giving evidence against oneself as protected by Article I, Section 12, Utah Constitution.

Judgment of the district court is affirmed. No costs are awarded.

STEWART and OAKS, JJ., concur.

DURHAM, Justice (concurring in result).

While I concur in the result reached by the majority opinion, I do because I do not believe that the performance of field sobrie-ty tests is subject to any constitutional privilege. I do not agree with the majority opinion's conclusion that "the defendant was not in custody, or otherwise significantly deprived of his freedom." To the contrary, under the circumstances of this case, the defendant was "taken into custody or otherwise deprived of his freedom of action in [a] significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

The courts have developed two tests for determining at what point *Miranda* applies: (1) the "focus" test of *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and (2) the objective-subjective test. *See* Smith, *The Threshold Question in Applying Miranda: What Constitutes Custodial Interrogation?,* 25 S.C.L.Rev. 699 (1974). *See also State v. Paz,* 31 Or.App. 851, 572 P.2d 1036 (1977). Under the "focus" test, *Miranda* applies when the investigation focuses on a particular suspect and the officer has probable cause to believe that a particular crime has been committed. *See, e.g., State v. Simpson,* Utah, 541 P.2d 1114 (1975). *See also* Annot., 31 A.L.R.3d 565 (1970). Under the objective-subjective test, *Miranda* applies if the actions of the police and the surrounding circumstances, fairly construed, would reasonably have led the defendant to believe that he was not free to leave at will. *See* Smith, *supra,* at 710–14.

I agree with the majority opinion's statement of the general rule that "temporary detention for the purpose of investigating alleged traffic violations is not synonymous with in-custody interrogation which requires a *Miranda* warning." *See, e.g., State v. Tellez,* 6 Ariz.App. 251, 431 P.2d 691 (1967) (recognizing that *Miranda* warnings are unnecessary for the investigation of "routine" traffic offenses); Annot., 31 A.L. R.3d 565 (1970); Annot., 25 A.L.R.3d 1076 (1969). However, the circumstances of the present case do not constitute the investigation of a "routine" traffic offense, but rather the investigation of a serious criminal act, driving while under the influence of intoxicants. *See* U.C.A., 1953, §§ 41–6–44 to –44.30 (1982 & Interim Supp.1982 & Spe-

cial Supp.1982). I believe that the defendant was in custody or otherwise significantly deprived of his freedom within the meaning of the *Miranda* decision.

Under the focus test, there is no question that the officer's investigation focused on the defendant. Furthermore, at the point where the officer requested the defendant to alight from the vehicle to perform the field sobriety tests, the officer had reasonable cause to believe that the particular crime of driving while under the influence had been committed. As stated in the majority opinion, the officer (1) observed the defendant's car cross the center line three times within a one-block distance, (2) smelled an odor of alcohol coming from the car's interior, and (3) noticed that the defendant's speech was slurred. In *State v. Darnell*, 8 Wash.App. 627, 508 P.2d 613 (1973), the court stated:

> Once the trooper had stopped the vehicle for traveling at an exceedingly slow speed and crossing the center line, had sensed the strong odor of alcohol in defendant's vehicle, and observed defendant's physical condition, he desired to further confirm his suspicions by physical tests. It was at that point that the investigation focused on defendant specifically for the crime charged. Once the trooper's reasoning brought him to request these tests, *Miranda* applied, not to the tests about to be performed, but to any statements defendant might make during the giving of such tests.

*Id.* at 629–30, 508 P.2d at 615. Moreover, under the objective-subjective test, the officer's requests that defendant alight from his vehicle to perform field sobriety tests would reasonably have led the defendant to believe that he was not free to leave at will. *See* Smith, *supra*. Thus, under either test, the defendant was in custody or otherwise significantly deprived of his freedom within the meaning of *Miranda, supra.*

The basic aim of the *Miranda* warning is to secure the privilege against self-incrimination. *See Miranda, supra,* at 444. Despite the differences in the language of the federal and various state constitutions, the privilege against self-incrimination has been held in an overwhelming majority of jurisdictions to be a bar only against compelling "communications" or "testimony" and not against requiring a suspect or accused to provide "real or physical evidence." *See, e.g., Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); 1 C. Antieau, *Modern Constitutional Law* § 2:31 (1969); 8 J. Wigmore, *Evidence* §§ 2263 & 2265 (McNaughton Rev.1961); Arenella, *Schmerber and the Privilege Against Self-Incrimination: A Reappraisal,* 20 Am.Crim.L.Rev. 31 (1982). The defendant contends that the field sobriety tests violate his privilege against self-incrimination under Article I, Section 12 of the Utah Constitution. However, the overwhelming weight of authority holds that, although a suspect or accused cannot be "compelled" to perform roadside or field sobriety tests, such tests do not violate an accused's privilege against self-incrimination because they are nontestimonial in nature. *See, e.g., People v. Ramirez,* 199 Colo. 367, 374 n. 8, 609 P.2d 616, 620 n. 8 (1980) (citing cases from nineteen jurisdictions); *State v. City of Tucson,* 12 Ariz.App. 529, 472 P.2d 952 (1970); 3 R. Erwin, *Defense of Drunk Driving Cases: Criminal-Civil* § 32.02[4] (1982 & Supp.1982).

The defendant bases his contention that the field sobriety tests violate his privilege against self-incrimination under the Utah Constitution on the case of *Hansen v. Owens,* Utah, 619 P.2d 315 (1980). His reliance is well placed. However, I would overrule the *Hansen* decision. I believe that it was wrongly decided and runs contrary to the present construction of the privilege as overwhelmingly interpreted. *See* Comment, *Hansen v. Owens—Expansion of the Privilege Against Self-Incrimination to Unknown Limits,* 1981 Utah L.Rev. 447.

In conclusion, I concur in the result reached by the majority opinion but disagree with its analysis. The roadside or field sobriety tests do not violate a suspect's or accused's privilege against self-incrimination under the Utah Constitution. Thus, whether the defendant was in custody and

therefore entitled to the *Miranda* warning is irrelevant to the admissibility of that evidence.

HALL, C.J., dissents.