STATE of Utah, Plaintiff and Appellee,

v.

Brant K. STRAUSBERG, Defendant
and Appellant.

No. 940241–CA.

Court of Appeals of Utah.

May 4, 1995.

Susanne Gustin–Furgis, Salt Lake City,
for appellant.

Cy H. Castle, Salt Lake City, for appellee.

Before BENCH, DAVIS and WILKINS,
JJ.

BENCH, Judge:

Defendant appeals his convictions for Driving Under the Influence of Alcohol Causing an Injury Accident, a Class A misdemeanor, in violation of Utah Code Ann. § 41–6–44 (1993), and Leaving the Scene of an Injury Accident, a Class A misdemeanor, in violation of Utah Code Ann. § 41–6–29 (1993). We affirm.

## FACTS

■ On appeal from a jury verdict, the facts are recited in a light most favorable to the jury's verdict. *State v. Diaz*, 859 P.2d 19, 20 (Utah App.1993), *cert. denied*, 878 P.2d 1154 (Utah 1994); *State v. Gray*, 851 P.2d 1217, 1219 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993).

Shortly after midnight on May 6, 1994, defendant was driving his semitrailer truck north on 900 East in Salt Lake County. It was raining and the streets were slippery. Defendant made a left turn onto the Van Winkle Expressway. As defendant made the turn, his trailer jackknifed and collided with a car in an adjacent lane. The car was pushed forward into another car. The force of the impact spun both cars around and sent them into the middle of the intersection, injuring the occupants.

Defendant did not stop. As defendant left the scene, witnesses were able to get a description of his vehicle and notify police. Officer David Richards, an officer employed by Granite School District, heard the police dispatch and saw defendant's truck. Richards followed the truck until it stopped in front of the house of defendant's father. He approached the cab of the truck and spoke with the passenger. Richards notified defendant and his passenger that their truck matched the description of the truck involved in an accident. Richards testified that he smelled the odor of beer coming from the cab and that he noticed that defendant's eyes and the passenger's eyes were bloodshot and glassy.

Richards radioed the sheriff's office. Sergeant Ken Mohler was the first to arrive in response to Richards's call. Mohler examined the trailer and found white transfer paint on its side that matched the color of one of the vehicles involved in the accident. Mohler asked defendant if he had been involved in an accident on 900 East and the Van Winkle Expressway. Defendant initially denied that he had been in that vicinity. However, when Mohler told defendant that witnesses at the scene described a truck similar to his, defendant admitted that he had been at that location.

Mohler turned the investigation over to Deputy David Mortensen to determine whether defendant was impaired. When Mortensen spoke with defendant, he noticed the odor of beer on defendant's breath and observed that his eyes were red and glassy and that his speech was slightly slurred. Mortensen explained and administered five field sobriety tests: (1) the finger count; (2) one-leg stand; (3) heel-to-toe walk; (4) Horizontal Gaze Nystagmus (HGN); and (5) alphabet recitation. According to Mortensen, defendant failed all five tests.

Mortensen first asked defendant to touch his thumb to the tips of each finger beginning with his little finger and counting up to four as he touched his pointer finger and then count backwards to his little finger. Mortensen instructed defendant to complete the sequence three times. Defendant performed the test four times and touched the sides of his fingers instead of the tips as instructed. Mortensen testified that when a person repeats the test more times than instructed and touches his or her fingers on the sides rather than the tips, it is indicative of a lack of concentration and an inability to follow directions.

Mortensen next instructed defendant to raise one leg six to eight inches off the ground and to count from 1,001 to 1,030. Mortensen observed defendant to see if he hopped, used his arms for balance, put his foot down or stopped the test before reaching 1,030. During this test, defendant lost his balance, put his foot down on the count of 1,005, and stopped the test at 1,015.

Mortensen next asked defendant to hold his hands down at his side and take nine steps with the heal of one foot touching the toe of the other foot, turn around, walk back in the same way taking only seven steps.

Defendant used his arms for balance and had difficulty balancing while walking.

Mortensen then gave defendant the HGN test. Mortensen held a pen twelve to fifteen inches in front of defendant's eyes and instructed him to follow the movement of the pen with his eyes while not moving his head. Mortensen was looking for three signs during this test: (1) whether defendant's eyes smoothly followed the pen; (2) whether defendant's eyes showed nystagmus[1] at maximum deviation; and (3) the angle of onset of nystagmus in each of defendant's eyes. Defendant's eyes could not pursue the pen smoothly and he had noticeable nystagmus at maximum deviation. Mortensen could not recall the angle of onset of defendant's nystagmus.

Finally, Mortensen instructed defendant to recite the alphabet twice beginning with "B" and ending with "S." Defendant recited the alphabet once as requested, but on the second time through he began with "A" instead of "B."

Based on defendant's physical appearance and his failure of the sobriety tests, Mortensen arrested defendant for driving under the influence. Mortensen testified that, on the way to take a chemical test defendant told him, "I'm not going to lie anymore. I believe that I've had four beers in the last hour and a half, and I believe this would put me over the limit. And it's easier to do it this way." In view of defendant's admission, a chemical test was not given.

Defendant argued at trial that he did not feel or hear the collision, and was confused as to his route of travel that night. He also claimed that he had not felt any effect from the alcohol and that he had performed well on all the field sobriety tests. The jury convicted defendant as charged, and this appeal followed.

---

1. Nystagmus is "an involuntary rapid movement of the eyeball which may be horizontal, vertical or rotary." *Dorland's Illustrated Medical Dictionary* 1068 (25th ed.1974).

2. Defendant made a timely objection to the admissibility of the HGN evidence at trial. Howev-

## ISSUES

Defendant raises the following issues on appeal: (1) whether the trial court erred by admitting the HGN test results without proper foundation under Rule 702 of the Utah Rules of Evidence and without a finding of inherent reliability; and (2) whether the trial court erred by admitting defendant's statements made without the benefit of a *Miranda* warning.

## ANALYSIS

### Field Sobriety Tests

Defendant argues that HGN test results constitute scientific evidence and must therefore meet the reliability requirement of Rule 702 of the Utah Rules of Evidence and the inherent reliability standard articulated in *Phillips v. Jackson*, 615 P.2d 1228, 1230–31 (Utah 1980).[2] Defendant asserts that the admission of the HGN evidence constitutes reversible error. We disagree.

"Only those errors that are harmful or prejudicial to the outcome of a trial or penalty phase provide grounds for granting a new hearing or overturning a conviction." *State v. Young*, 853 P.2d 327, 361 (Utah 1993) (citing *State v. Dibello*, 780 P.2d 1221, 1230 (Utah 1989)). " '[T]he standard for dealing with non-constitutional error is that [the court] will not reverse a conviction unless the error is substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant.' " *Id.* (quoting *State v. Johnson*, 771 P.2d 1071, 1073 (Utah 1989)); *see also State v. Bishop*, 753 P.2d 439, 477 (Utah 1988) (holding that for "error to require reversal, likelihood of a different outcome must be sufficiently high to undermine our confidence in the [jury's] verdict.")

In the present case, Richards smelled the odor of beer coming from the cab of defen-

---

er, defendant did not present any evidence of the reliability of the HGN test to the trial court. We generally will not address arguments made for the first time on appeal. *See State v. Webb*, 790 P.2d 65, 71 n. 2 (Utah App.1990), *cert. denied*, 860 P.2d 943 (Utah 1993).

dant's truck. Mortensen also noticed the odor of beer on defendant's breath and that his speech was slightly slurred. Both Richards and Mortensen observed that defendant's eyes were bloodshot and glassy. Defendant was unable to follow directions and failed all of the field sobriety tests. Moreover, after being arrested and on the way to take the chemical test, defendant admitted that he had consumed four beers in the last hour and a half and surmised that he was therefore over the legal blood alcohol limit.

The defendant's physical appearance, slurred speech, the odor of beer, lack of balance, failure of the field sobriety tests, admission that he had been drinking and that he was probably over the legal blood alcohol limit all support the jury's verdict. Therefore, even if the trial court erred by admitting the HGN evidence,[3] any alleged error was harmless in that there is not a reasonable likelihood of a different outcome. *See Young,* 853 P.2d at 361.

#### Defendant's Statements to Mohler

■ Defendant argues that the trial court erred by admitting into evidence statements he made to Mohler prior to being given a *Miranda* warning.[4] We disagree.

■ In *State v. Wood,* 868 P.2d 70 (Utah 1993), the supreme court addressed the purpose of *Miranda* warnings under the Fifth Amendment to the United States Constitution:

> The Fifth Amendment to the United States Constitution guarantees that a defendant shall not be "compelled in any criminal case to be a witness against himself." To secure this fundamental right, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), established procedural safeguards to be followed in a custodial interrogation. The prescribed procedures require a warning that the defendant has the right to remain silent and the right to have an attorney present during questioning. *Id.* at 444, 86 S.Ct. at 1612. The defendant may waive these rights, but the waiver must be voluntary, knowing, and intelligent. *Id.* ... The prosecution may not use as evidence a defendant's statements obtained in violation of these safeguards. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.

*Id.* at 81. A temporary detention for the purpose of investigating traffic violations is not considered a custodial interrogation requiring *Miranda* warnings. *Salt Lake City v. Carner,* 664 P.2d 1168, 1170 (Utah 1983). A *Miranda* warning is required, however, when the environment becomes custodial or accusatory. *Id.* Custody, for purposes of *Miranda,* occurs "when a suspect's freedom of action is curtailed to a degree associated with formal arrest." *State v. East,* 743 P.2d 1211, 1212 (Utah 1987).

■ Generally, four factors must be considered in determining whether an accused individual who has not been formally arrested is in custody for *Miranda* purposes: "(1) the site of the interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation." *Carner,* 664 P.2d at 1171; *accord Bishop,* 753 P.2d at 465 n. 77; *State v. Teuscher,* 883 P.2d 922, 929 (Utah App.1994), *cert. denied,* No. 940551, slip op. (Utah March 8, 1995). "The absence of 'coercive or compulsive strategy on the officer's part' evidences a noncustodial interrogation that 'does not suggest the type of abuse *Miranda* is intended to prevent.'" *Wood,* 868 P.2d at 82 (quoting *State v. Kelly,* 718 P.2d 385, 391 (Utah 1986)).[5]

---

3. We do not reach the question of whether or not the trial court erred by admitting the HGN evidence.

4. Defendant does not challenge the admission of the statement he made to Mortensen after his arrest about the amount of alcohol he had consumed and his level of intoxication.

5. In *Teuscher,* this court discussed the standard of review applicable to custody determinations by trial courts:

> While the appellate courts have determined the legal standards applicable to custody determinations in *Wood* and *Carner,* the trial court has some discretion to apply those legal standards to unique fact situations. *See State v. Pena,* 869 P.2d 932, 936–38 (Utah 1994); *see also, Estate of Clay T. Beesley,* [883 P.2d 1343, 1347–48 (Utah 1994)] (trial court given considerable discretion where articulated legal standard is applied to highly variable fact patterns). Stated in terms used by the *Pena* court,

As to the first factor (the site of the interrogation), defendant was initially questioned inside of the cab of his truck parked in front of his father's home. This setting was as free from compulsion as possible when a person is being questioned by police. *See East*, 743 P.2d at 1212 (holding that site of traffic stop is " 'substantially less 'police dominated' than that surrounding the kinds of interrogations at issue in *Miranda* itself' ") (quoting *Berkemer v. McCarty*, 468 U.S. 420, 438–39, 104 S.Ct. 3138, 3149–50, 82 L.Ed.2d 317 (1984)). Additionally, this is the type of setting in which most investigatory traffic stops occur and a *Miranda* warning is not necessary unless the investigation becomes custodial or accusatory. *See Carner*, 664 P.2d at 1170. As to the second factor (whether the investigation had focused on defendant), the police found and questioned two individuals in the truck. While defendant was a suspect of the investigation, it was not yet known whether defendant or the passenger had even been at the scene. As to the third factor (whether there were objective indicia of arrest), there were no more indicia of arrest than are present in a normal investigatory traffic stop. Defendant was in his truck during the investigatory questioning and there were no handcuffs, no locked doors, and no drawn weapons. As to the fourth factor (the length and form of the interrogation), Mohler's questions and defendant's answers occurred shortly after Mohler's arrival on the scene. Mohler merely asked defendant if he had been involved in a traffic accident at 900 East and the Van Winkle Expressway. This question was not coercive and was merely investigatory in nature. Mohler was attempting to determine whether defendant's truck had been involved in an accident. Defendant's response only became incriminating when Mohler informed him that there were witnesses to the accident that described a truck similar to his.

we grant some degree of discretion to the trial court to determine ultimate fact where "the facts to which the legal rule is to be applied are so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out. . . ." *Pena*, 869 P.2d at 939 (citing Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*,

We conclude that the trial court did not abuse its discretion by ruling that defendant was not in custody for *Miranda* purposes when he admitted to being at the scene of the accident. The trial court therefore did not err by admitting the statements defendant made to Mohler.

## CONCLUSION

The admission of the HGN evidence, even if error, was not prejudicial. The trial court did not err by admitting into evidence statements made by defendant prior to receiving a *Miranda* warning.

Defendant's convictions are affirmed.

DAVIS and WILKINS, JJ., concur.

22 Syracuse L.Rev. 635, 662–63 (1971)); *accord State v. Barnhart*, 850 P.2d 473, 475–77 (Utah App.1993). Because the determination of custody for *Miranda* purposes is fact sensitive, we accord a measure of discretion to the trial court's determination unless such determination exceeds established legal boundaries. *Teuscher*, 883 P.2d at 929.