**SALT LAKE CITY, Plaintiff and Appellee,**

v.

**Carol S. GARCIA, Defendant and Appellant.**

No. 950290–CA.

Court of Appeals of Utah.

Feb. 29, 1996.

Ralph W. Dellapiana, Salt Lake Legal Defender Ass'n., Salt Lake City, for Appellant.

Scott A. Fisher, Salt Lake City Prosecutor's Office, Salt Lake City, for Appellee.

Before BENCH, JACKSON, and WILKINS, JJ.

WILKINS, Judge:

Defendant Carol Garcia appeals her conviction of driving under the influence of alcohol, a class B misdemeanor, in violation of Salt Lake City Code § 12.24.100 (1995). Specifically, Garcia appeals the trial court's decision to admit a police officer's testimony of the results of her Horizontal Gaze Nystagmus test. We affirm.

## BACKGROUND

On March 5, 1994, around 8:30 p.m., Officer Warner, an officer with eleven and one-half years of police experience, observed a car turn left onto State Street in Salt Lake City. The car turned in heavy traffic, with two teenagers sitting on the car's roof with their legs hanging through the sunroof. When the teenagers became aware of Officer Warner, they ducked into the car.

After having the car pull to the side of the road, Officer Warner asked the driver, Garcia, for her driver's license, which she was unable to produce. By this time, Officer Warner noticed a very strong odor of alcohol coming from the car. He also noticed Garcia's eyes were very red. Based on these observations, Officer Warner asked her if she had consumed any alcohol. Garcia said no. Because Officer Warner doubted Garcia's answer, he asked her to talk to him on the sidewalk away from the car's passengers. On the sidewalk, Garcia admitted she had consumed alcohol, claiming she had two beers about six and one-half hours earlier, at 2:00 p.m. that day. Officer Warner then conducted field sobriety tests.

Officer Warner first administered the Horizontal Gaze Nystagmus (HGN) test, a standard field sobriety test that tests for nystagmus, a rapid involuntary movement of the eyeball in a horizontal, vertical, or rotary direction. *See State v. Witte,* 251 Kan. 313, 836 P.2d 1110, 1112 (1992) (citing *Dorland's Illustrated Medical Dictionary* 1068 (25th ed. 1974)). An officer performs this test by instructing the driver to focus his or her eyes on a stimulus, such as a pen, then moving the stimulus as the officer observes the driver's eyes. When administering the HGN test to Garcia, Officer Warner noticed that in both eyes she lacked smooth pursuit, had distinct nystagmus at maximum deviation, and onset of nystagmus prior to her eyes reaching 45 degrees of deviation from looking directly ahead. Officer Warner testified that all of these signs tend to indicate the driver's blood alcohol content level is high.

Next, Officer Warner administered the "walk and turn" test, another standard field sobriety test. Garcia lost her balance once while Officer Warner gave her instructions. While taking the test, Garcia walked a total of nine steps, heel to toe, down a line, and then, instead of turning to finish the test, stopped and asked what she was supposed to do next. Between steps five and six, Garcia's heel and toe missed contact by more than two inches.

The third test Officer Warner gave Garcia was the "finger count" test. This test is a variation of a standard field sobriety test,

and was an accommodation made to Garcia because she told Officer Warner she had ankle problems. The officer administers this test by having the driver touch the tip of each finger with her thumb, counting that finger out loud, three times. The third time Garcia counted her fingers she counted "one, two, three, four, four, two, three, one."

Finally, Officer Warner administered the "head tilt and count test," also known as the "Romberg test," to Garcia. The Romberg test is administered by having the driver estimate the passage of thirty seconds with her feet together, arms down at her sides, eyes closed, and head tilted back. Officer Warner testified Garcia had "real obvious body sways" from left to right, characteristic of the "balance problems" Officer Warner was looking for in this test. In addition, Garcia "opened her eyes and completed her test after nine seconds had elapsed."

During the field sobriety tests, Officer Williams, Officer Warner's backup officer, observed Garcia's body swaying from side to side. Officer Williams testified that Garcia seemed "unbalanced" and her eyes had a "bloodshot, glassy color." He also testified that she had "a very distinct odor of alcohol coming from her breath" which was "very apparent[ ] from her breath as she spoke." In addition, Officer Warner testified that when he first spoke with Garcia on the sidewalk after pulling her over, she was "friendly," and "[i]n fact ... seemed a little bit on the happier, giggly side."

Garcia also took a portable breath test, which indicated she had consumed alcohol.

Officer Warner, based on what he had seen and smelled, and in accordance with his training and experience, believed that Garcia was "under the influence of alcohol and unable to safely operate a motor vehicle." He then placed Garcia under arrest for driving under the influence of alcohol pursuant to the Salt Lake City Code. *See* Salt Lake City Code § 12.24.100(A) (1995) (prohibiting "any person [from operating] ... a vehicle ... if the person has a blood or breath alcohol content of .08 grams [or more] ... or if the person is under the influence of alcohol ..: to a degree which renders the person incapable of safely driving a vehicle").

At the police station, Garcia was asked to submit to an intoxilyzer test, another more reliable breath test. She refused. She was warned that if she refused the test her license would be suspended. *See* Utah Code Ann. § 41–6–44.10(1)(a) & (2)(a) (Supp.1995). When Garcia refused the test she said, "Another one? No I won't take another one.... What's the point? My license is suspended anyway."

In a search incident to Garcia's arrest and the impound of her car, the police found an open, half empty can of beer under the driver's seat. Another open, half empty beer can was found under the right front passenger seat. Three cold unopened Seagrams' coolers were found in the rear passenger compartment.

At Garcia's trial, the court allowed Officer Warner to give testimony of Garcia's performance on the HGN test, over Garcia's objection. The jury convicted Garcia, and she now appeals, claiming the trial court erred in admitting Officer Warner's testimony of the HGN test because the HGN test is scientific evidence that must meet the inherent reliability standard adopted by the Utah Supreme Court. *See State v. Rimmasch,* 775 P.2d 388, 403 (Utah 1989) (adopting test articulated in *Phillips v. Jackson,* 615 P.2d 1228 (Utah 1980), requiring foundation prior to admission of paternity tests as to reliability of both human leucocyte antigen tests in general and of particular scientific tests in each case). Garcia argues the trial court's admission of the HGN test results was erroneous and prejudicial error requiring reversal of her conviction.

## STANDARD OF REVIEW

■ The appropriate standard of review for questions of admissibility of evidence is the abuse of discretion standard. *See State v. Pena,* 869 P.2d 932, 938 (Utah 1994). In addition, "[i]n reviewing a trial court's decision to admit evidence, we will not reverse that ruling unless a substantial right of the party has been affected." *State v. Oliver,* 820 P.2d 474, 479 (Utah App.1991) (citations omitted), *cert. denied,* 843 P.2d 516 (Utah 1992).

## ANALYSIS

██ The trial court did not admit Officer Warner's testimony of Garcia's HGN test results as scientific evidence. Instead, the court admitted the testimony simply as observations of a police officer who had been trained to administer the HGN test, who had experience giving drivers the HGN test, and who had the benefit of later knowing the results of the driver's blood alcohol level, as confirmed by chemical tests. The court explained this limited purpose for which he was admitting Officer Warner's testimony of the HGN test results:

> ... *I'm not admitting [Officer Warner's testimony] as scientific evidence.* I am admitting it as evidence of a circumstance that Officer Warner has been trained to observe and that he bases, in part, his opinion about the defendant's ability to drive safely upon. Based upon his own personal experiences and the training that he's received. *He cannot testify that it's scientifically accepted fact* that if you have a blood alcohol level of over a certain level you're going to have bouncing eyeballs. He testified that he did the test. He was trained to do the test. He's observed the test before. And he's made arrests based upon that. He's observed a strong correlation between people who he has concluded otherwise were under the influence of alcohol and presence of that, of those indicia. And you can ... do all the cross examination you want to about any limitations you believe in the administration of the test [and] ... the background that he has as to whether ... the knowledge that he has as to whether people can have HGN without having consumed any alcohol.

(Emphasis added).

Officer Warner's testimony stayed within these parameters. Officer Warner explained that he was "familiar with [the HGN test]," and that his understanding of the HGN test, its purpose and administration, was based solely on his "training and experience." Officer Warner explained what he meant by his "training and experience." He testified that in the course of his career as a police officer, he had observed "hundreds" of intoxicated people. He had received HGN test training,

and under the controlled conditions of the training experience, had observed a correlation between the presence of clues he looked for when conducting the HGN test and a person's alcohol consumption. In addition, he had seen the results of the HGN test correlate to a person's consumption of alcohol while working in the field, away from the controlled atmosphere of the training experience. Officer Warner testified that since his original police training in 1983 and 1984, he had undergone intoxilyzer certification, had spent numerous hours of training on standard field sobriety testing, and had trained in a drug recognition expert school. In addition, Officer Warner testified outside the jury's presence that he administered the HGN test about 250 times per year.

Officer Warner offered no testimony that it is a scientifically accepted fact that alcohol consumption causes visible nystagmus. In fact, during his cross-examination of Officer Warner, Garcia's counsel clearly revealed to the jury that Officer Warner was not a medical expert, nor was he familiar with the scientific principles underlying the causes of nystagmus. Rather, both the direct, cross-, and re-direct examinations of Officer Warner revealed that he was not a scientist, nor was he testifying about scientific studies or any other such evidence intended to prove that visible nystagmus was inevitably the result of alcohol consumption. Officer Warner stated during his testimony that, based on his training and experience, he understood that some people exhibit nystagmus of the eye even though they have not consumed alcohol, because visible nystagmus can result from many different causes. Officer Warner testified that the signs of nystagmus in Garcia was only one indication to him resulting from all the sobriety tests that she was incapable of safely driving due to the influence of alcohol. Officer Warner testified that he based this analysis and opinion on his police training and experience.

Furthermore, the jury was given the following instruction to ensure they were not misguided into thinking Officer Warner was testifying of scientific evidence:

> You have heard evidence that the defendant was administered a field sobriety test

known as the "Horizontal Gaze Nystagmus" or HGN test. *However, there has been no evidence presented, nor may you infer or assume, that that test is a scientifically accurate means of determining alcohol or drug impairment. Rather, evidence of the HGN test has been admitted solely as a part of the basis of the arresting officer's opinion that the defendant was under the influence of alcohol to the extent that she was not capable of safely operating a motor vehicle.* You are not bound to agree with the officer's opinion, nor are you obligated to give any weight to the evidence regarding the HGN test. It is your duty as jurors to independently determine whether the defendant was capable of safely operating her vehicle. In considering that issue, you may give whatever weight you deem proper to the officer's opinion and to any of the various bases for that opinion.

(Emphasis added). Therefore, the jury was specifically instructed not to consider Garcia's HGN test results as scientific evidence, and we assume the jurors complied with this instruction. *See State v. White,* 577 P.2d 552, 555 (Utah 1978) ("[I]t is to be assumed that the jurors adhered to their oath which required them to follow [their jury] instruction."); *State v. Burk,* 839 P.2d 880, 883 (Utah App.1992) (" 'In the absence of the appearance of something persuasive to the contrary, we assume that the jurors were conscientious in performing their duty, and that they followed the instructions of the court.' " (quoting *State v. Hodges,* 30 Utah 2d 367, 370, 517 P.2d 1322, 1324 (1974))), *cert. denied,* 853 P.2d 897 (Utah 1993).

## CONCLUSION

We hold that the court did not err in admitting Officer Warner's testimony of Garcia's HGN test results. The testimony was admitted with the explicit disclaimer that it was not scientific evidence, but that it was only Officer Warner's observations based on his substantial training and experience. Officer Warner testified that he had observed, both in his training and field work, a correlation between signs of visible nystagmus and alcohol consumption. Moreover, Officer Warner did not in any way testify that HGN testing was scientifically accepted or reliable, nor did he testify that he understood the scientific principles underlying HGN testing.

Because the court allowed Officer Warner to testify only as to his training, experience, and observations, the court was not required to follow the *Rimmasch* inherent reliability standard and requirements. In so holding, we do not address whether HGN test results are scientific evidence or what standard of admissibility they must meet if admitted by a court as scientific evidence.

Affirmed.

JACKSON, J., concurs.

BENCH, Judge (concurring):

This case is controlled by *State v. Strausberg,* 895 P.2d 831 (Utah App.1995). In view of all the other evidence presented, including evidence that Garcia failed other field sobriety tests, we need not address whether the officer's testimony as to the HGN test was admissible. *Id.* at 834 & n. 3. Error, if any, in admitting the HGN testimony was harmless. *Id.*

However, in view of the representation by both parties that trial courts need further direction on the issue, I am willing to go beyond what *Strausberg* requires and opine that the HGN testimony was properly admitted in this case. As indicated in the main opinion, the HGN testimony was not admitted as scientific evidence. The foundational requirements discussed in *State v. Rimmasch,* 775 P.2d 388 (Utah 1989) are therefore not applicable. *See State ex rel. G.D. v. L.D.,* 894 P.2d 1278, 1284, (Utah App.1995) (technique eliciting information was not based on analysis of scientific process or statistical profile).