2002 UT App 291

**STATE of Utah, Plaintiff and Appellee,**

v.

**Tracy Micah ALLRED, Defendant and Appellant.**

**No. 20010113–CA.**

Court of Appeals of Utah.

Sept. 12, 2002.

Heather Johnson and Lisa J. Remal, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General and Marian Decker, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges JACKSON, BENCH, and GREENWOOD.

## OPINION

BENCH, Judge:

¶ 1 Defendant appeals his conviction of possession of a controlled substance with intent to distribute. We affirm.

## BACKGROUND

¶ 2 While on patrol in Liberty Park, Officers Dimond and Evans approached a picnic table where Defendant and five other people were sitting. The officers asked if they had seen any drug activity in the area and were told no. The officers then asked the individuals for identification and checked for outstanding warrants. None of the individuals had warrants. As the officers were preparing to leave, one of them noticed a black bag underneath the picnic table with no one sitting near it. The officers asked who owned the bag, and all six individuals denied ownership. The officers also asked other people in the vicinity and no one claimed ownership. When the officers looked inside the bag to locate anything to identify its owner, they discovered some car stereos, a couple of baggies of marijuana, and eighty-two empty one-inch square baggies.

¶ 3 The officers took each person aside separately and again inquired as to the bag's owner. All six again denied any knowledge of the bag. The officers then conferred with one another, within hearing distance of the people at the picnic table, as to how they could identify who owned the bag. The officers discussed bringing a police dog to the scene. The officers had available to them two types of police dogs: canines and bloodhounds. Canines are dogs specifically trained to locate narcotics, and are also used to apprehend fleeing suspects. The officers expressed some reservations about bringing a canine to the scene because of its training to treat narcotics as a toy. One of the officers said he had seen a canine nip a suspect who had stuffed narcotics down his pants. Ultimately, the officers decided to call for a bloodhound to come to the scene because bloodhounds are trained only to locate a particular scent, either a person or an object.

¶ 4 After the officers had this discussion, but prior to the bloodhound's arrival on the scene, Defendant confessed that he owned the bag (the pre-Miranda confession). The officers arrested Defendant, told him they wanted to ask him a few questions, and asked him if he had ever been read the Miranda warnings. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant said that he had. Officer Evans nonetheless explained the Miranda rights, after which Defendant agreed to talk to the officers. Defendant again admitted that the bag belonged to him, and admitted to selling marijuana in the park (the post-Miranda confession). The bloodhound eventually arrived at the scene, but did not leave the transport car until after Defendant was arrested and seated in the back of Officer Dimond's car.

¶ 5 Defendant was charged with possession of a controlled substance with the intent to distribute. In a pretrial motion, Defendant moved to suppress the evidence of his confessions alleging that they were the results of police misconduct. The trial court suppressed Defendant's pre-Miranda confession, but allowed in his post-Miranda confession. During the trial, Defendant moved for a mistrial alleging that the State had violated a pretrial stipulation regarding evidence of car stereos found in the bag with the marijuana, and that the jury had been tainted by a statement of one of the officers that Defendant had been read his Miranda rights before. The trial court denied the motion, concluding that Defendant's arguments were without merit. However, in an abundance of caution, the trial court offered a curative instruction regarding the officer's Miranda statements.

¶ 6 At trial, Defendant called Sonya Ortiz, one of the six people sitting at the picnic table, to testify on his behalf. Ms. Ortiz testified about an individual she knew only as "Clay." She said Clay had originally been with the group, but had left when the police officers approached. She claimed that Clay returned to the area approximately one hour after Defendant was arrested. Ms. Ortiz further testified that Clay was angry when he returned. Defense counsel attempted to elicit testimony from Ms. Ortiz that when Clay returned, he said that the bag was his. The State objected to this testimony as hearsay, and the trial court sustained the objection over Defendant's argument that the statement fell under the excited utterance exception to the hearsay rule.

¶ 7 The jury found Defendant guilty of possessing a controlled substance with intent to distribute. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Defendant first argues that the trial court erred when it refused to suppress the post-Miranda confession, ruling that it was not obtained through coercion. "In reviewing the trial court's denial of [Defendant's] motion to suppress, we examine the underlying factual findings for clear error, and review the trial court's conclusions of law based thereon for correctness." *State v. Hayes,* 860 P.2d 968, 971 (Utah Ct.App.1993) (quotations and citations omitted). We may affirm the trial court's judgment on any ground available, whether or not it was relied on by the trial court. *See Bailey v. Bayles,* 2002 UT 58,¶ 9, 450 Utah Adv. Rep. 34, 52 P.3d 1158.

¶ 9 Defendant next argues that the trial court erred when it denied his motion for mistrial. "We will not reverse a trial court's denial of a motion for mistrial absent an abuse of discretion." *State v. Robertson,* 932 P.2d 1219, 1230 (Utah 1997).

¶ 10 Finally, Defendant argues that the trial court erroneously concluded that the excited utterance exception to the rule against hearsay did not apply to Ms. Ortiz's testimony regarding Clay. When considering a trial court's determination regarding hearsay testimony, we must first determine " 'whether the trial court's analysis involves a factual or a legal determination or some combination thereof.' " *State v. Parker,* 2000 UT 51,¶ 13, 4 P.3d 778 (quoting *Hansen v. Heath,* 852 P.2d 977, 978 (Utah 1993)). We apply a clearly erroneous standard because "the trial court's exclusion of the exculpatory statements turned on its factual determinations regarding the reliability of these statements." *Id.*

## ANALYSIS

### I. Confession

█ ¶ 11 In denying Defendant's motion to suppress, the trial court first ruled that Defendant's pre-Miranda confession was inadmissible because Defendant made the statement before receiving Miranda warnings. Although both parties addressed this issue in their memoranda supporting and opposing the motion to suppress, and again during the suppression hearing, neither party squarely addresses the issue on appeal.

> [I]t is well settled that an appellate court may affirm the judgment appealed from "if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee...."

*Dipoma v. McPhie,* 2001 UT 61, ¶ 18, 29 P.3d 1225 (quoting *Limb v. Federated Milk Producers Ass'n,* 23 Utah 2d 222, 461 P.2d 290, 293 n. 2 (1969)); *see also Boud v. SDNCO, Inc.,* 2002 UT 83, ¶ 10, 56 P.3d 1148 *Banks v. Means,* 2002 UT 65, ¶ 7, 52 P.3d 1190. We conclude that there is adequate support in the record to affirm the trial court's judgment on the ground that the pre-Miranda confession was admissible. We also conclude that doing so presents no constitutional difficulties to Defendant, because the argument was made below.[1]

█ ¶ 12 In ruling on Defendant's motion to suppress, the trial court first concluded that Defendant's pre-Miranda confession was inadmissible because it "was made without benefit of the Miranda warnings." However, the United States Supreme Court has "held that these safeguards 'come into play whenever a person in custody is subjected to either express questioning or its functional

equivalent.'" *Hayes,* 860 P.2d at 971 (quoting *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980)). Thus, Defendant's pre-Miranda confession is inadmissible only if it was the result of a custodial interrogation. *See id.*

█ ¶ 13 In *Salt Lake City v. Carner,* 664 P.2d 1168 (Utah 1983), the Utah Supreme Court identified four factors to be considered when determining whether an individual who has not been formally arrested is in custody. *See id.* at 1171. These factors are "(1) the site of the interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation." *Id.* In this case, Defendant and the officers were in a public park sitting at a picnic table with others when Defendant first claimed ownership of the bag. Defendant was not the sole focus of the investigation; the officers asked the same questions to all six individuals in an attempt to identify the bag's owner. Moreover, none of the indicia of arrest were present except perhaps for the officers' empty threat to cite all of the individuals at the table for possession of marijuana. Defendant was not handcuffed, the officers did not have their guns drawn, and there were no indications that Defendant was to be moved to a more custodial environment such as a police car or police station. Officer Evans testified that the length of time between their initial contact with the individuals at the picnic table and Defendant's arrest was twenty to forty minutes. Defendant was therefore not in custody when he made the incriminating statements.

¶ 14 Further, Defendant was not subjected to either " 'express questioning or its functional equivalent' " when he confessed. *Hayes,* 860 P.2d at 971 (quoting *Innis,* 446 U.S. at 300, 100 S.Ct. at 1689). The only express questioning Defendant was subjected to was when the officer pulled him aside

1. In *Bailey v. Bayles,* 2002 UT 58, 450 Utah Adv. Rep. 34, 52 P.3d 1158, the supreme court recognized that there may be certain circumstances where the alternate grounds relied upon by the appellate courts in affirming the lower court judgment may come as a surprise to the parties. *See id.* at ¶ 13 n. 3. In such circumstances, the court recommended giving the parties the option to argue the alternate grounds in supplemental briefing so that issues regarding timely and adequate notice can be resolved. *See id.* We do not see the need for supplemental briefing in this case, since the issue of the admissibility of the pre-Miranda confession was raised and argued by both parties in their memoranda to the trial court regarding the suppression motion.

individually and asked if the bag was his or if he knew whose bag it was. This was the same question asked to the other five individuals, and Defendant responded to the question by denying ownership and any knowledge as to ownership.

¶ 15 We cannot conclude that the officers' discussion between themselves about bringing a dog to the scene was the functional equivalent of express questioning of Defendant. It was not the type of discussion that " 'the police should know … [was] reasonably likely to elicit an incriminating response from the suspect.' " *Id.* (citation omitted). Defendant characterizes the conversation as a coercive tactic used by the police to wring a confession out of him through the implicit threat of attack by a vicious dog. The record does not support this position. Faced with an impasse in their investigation, the officers had a discussion between themselves, which, although conducted within the hearing of the individuals at the picnic table, did not include and was not directed at them. The officers were not making threats, veiled or otherwise, but were discussing their options to further the investigation and identify the bag's owner. In deciding that it might be advisable to bring a dog to the scene, they discussed their options as to a canine or a bloodhound. Any references to a certain canine's propensity to nip individuals concealing drugs on their person was made in the context of the officers' reservations about bringing this type of dog to the scene. Thus, the officers determined to call for a bloodhound, not a canine, out of concern for the safety of the individuals in the park. Therefore, we cannot agree that the officers' discussion about dogs was the functional equivalent of interrogation.

¶ 16 We have determined that the trial court erred in suppressing Defendant's pre-Miranda confession because it was not obtained as the result of a custodial interrogation. Given that, we readily agree with the trial court's ultimate conclusion that Defendant's post-Miranda confession was not obtained through coercion. If the totality of the circumstances do not support a conclusion that Defendant was subject to a custodial interrogation, then they also do not support the conclusion that Defendant's con-

fessions were obtained through "coercive tactics of the police [that] overcame the [D]efendant's free will." *State v. Galli,* 967 P.2d 930, 936 (Utah 1998). Having concluded that the trial court correctly admitted Defendant's post-Miranda confession, we need not address Defendant's state constitution argument regarding harmfulness of the alleged error.

## II.  Motion for Mistrial

¶ 17 Defendant argues that the trial court erred when it ruled that the State had not violated a pretrial stipulation, and denied his request for a mistrial. The stipulation concerned the car stereos found in the bag, which Defendant had admitted to police were stolen. Defendant's counsel objected prior to trial to the admission as a prior bad act and the State agreed that it would not introduce it for the purpose of showing that the car stereos had been stolen. Defendant's perception of the stipulation was that no mention would be made at all as to the contents of the bag other than the marijuana. During questioning of the officers, however, the State elicited testimony wherein they identified the bag as containing car stereos in addition to the marijuana. Defense counsel did not object at this point, but requested a sidebar, wherein she moved for a mistrial based on the State's violation of the pretrial stipulation. Both the prosecutor and the trial judge said that their perception of the stipulation was only that the prosecution would not refer to the stereos as stolen.

¶ 18 The trial court interpreted the stipulation so as to fall legitimately within the confines of rule 404(b) of the Utah Rules of Evidence. Thus, although the prosecution's witness identified the additional items in the bag as car stereos, no mention was made as to the origin of the stereos. Defendant urges us to conclude that the mere mention of the car stereos is violative of rule 404(b) and was designed to portray him as a "person of evil character with a propensity to commit crime." *State v. Daniels,* 584 P.2d 880, 882 (Utah 1978). We disagree. The stereos were never identified as stolen and the jury was never informed of Defendant's admission that he had stolen them. The

prosecutor's sole purpose in mentioning the other items in the bag was to bolster the State's proof that the bag was, in fact, Defendant's since he was familiar with its contents. Therefore, we conclude that the trial court did not err in allowing mention of the car stereos. Further, any error that may have resulted was harmless. *See State v. Wetzel,* 868 P.2d 64, 69 (Utah 1993) (holding that even if error was made, reversal is not warranted absent a showing of prejudice). The stereos were not introduced as products of a crime or other bad act, and other testimony, including Defendant's confession, provided the jury with ample evidence to find Defendant guilty of the crime charged.

¶ 19 Defendant also argues that the trial court should have granted a mistrial based on testimony from Officer Evans that after Defendant's arrest, he asked Defendant "if he had ever been read his Miranda rights. He said yes." Defendant argues that this identified him to the jury as a habitual criminal. The trial court suggested a curative instruction, which defense counsel initially declined, but ultimately asked to be given to the effect that before questioning a suspect, officers will often check to see if the suspect has been administered his Miranda warnings by another officer.

¶ 20 " 'Once the trial court has exercised [its] discretion and made [its] judgment thereon, the prerogative of this court on review is much more limited.' " *State v. Robertson,* 932 P.2d 1219, 1231 (Utah 1997) (citation omitted) (alterations in original).

> Unless a review of the record shows that the [trial] court's decision is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of discretion.

*Id.* Defendant has not shown the requisite abuse of discretion. The trial court appropriately found that the statement did not "imply to the average person listening any prior problems with the law. It is neutral in that respect." Nevertheless, the trial court offered a curative instruction, which was approved by defense counsel, to neutralize any possible negative effect. *See State v. Har-*

*mon,* 956 P.2d 262, 271–72 (Utah 1998) (stating curative instructions are a necessary tool used by trial courts to correct errors). We therefore cannot conclude that the trial court abused its discretion in denying Defendant's motion for mistrial.

### III. Excited Utterance

¶ 21 Defendant's final claim of error relates to the exclusion of Ms. Ortiz's hearsay testimony as to what Clay said upon returning to the picnic table. Defendant argues that Clay's statements should have come in pursuant to the excited utterance exception to the rule against hearsay. *See* Utah R. Evid. 803(2).

¶ 22 "Exceptions to the hearsay rule are based on factors that provide assurances of testimonial reliability sufficient to dispense with the usual means of purging testimony of error and falsehood." *State v. Smith,* 909 P.2d 236, 239 (Utah 1995). The trial court found that there was not sufficient evidence about Clay to provide these assurances of reliability. We agree.

> In assessing a declarant's state of mind, ... it is necessary to consider the likely effects of the declarant's age, the declarant's physical and mental condition, the circumstances and nature of the startling event, the subject matter of the statement, and the time lapse between the event and the utterance.

*Id.* at 240. It was impossible for the trial court to evaluate Clay's state of mind because nothing was known about him except his first name. Further, we agree with the trial court that the circumstances do not amount to a situation that induces a "mental state that tends to block reflection and the reasoning process." *Id.* at 241. We thus conclude that the trial court did not clearly err in finding that the hearsay statements did not fit within the excited utterance exception.

### CONCLUSION

¶ 23 We affirm the trial court's decision permitting admission of Defendant's confession, although on alternate grounds. We conclude that Defendant's pre-Miranda con-

fession was not the subject of a custodial interrogation; therefore, the lack of a Miranda warning is inapposite and no police illegality tainted the post-Miranda confession. We further conclude that the trial court did not abuse its discretion in denying Defendant's motion for mistrial, nor did it clearly err in excluding Ms. Ortiz's hearsay testimony.

¶ 24 Accordingly, we affirm Defendant's conviction.

¶ 25 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and PAMELA T. GREENWOOD, Judge.