2004 UT App 396

**STATE of Utah, Plaintiff and Appellee,**

v.

**Ralph LEVIN, Defendant and Appellant.**

No. 20030336–CA.

Court of Appeals of Utah.

Nov. 4, 2004.

Margaret P. Lindsay, Orem, for Appellant.

Carlyle Kay Bryson and Nyal C. Bodily, Provo, for Appellee.

Before BILLINGS, P.J., JACKSON and THORNE, JJ.

## OPINION

JACKSON, Judge:

¶ 1 Ralph Levin challenges his conviction for possession or use of marijuana with a prior conviction under Utah Code section 58–37–8(2)(a)(i) and for possession of drug paraphernalia under Utah Code section 58–37a–5(1). We affirm.

## BACKGROUND

¶ 2 In May 2001, Deputy Wayne Keith was patrolling along the Provo Dike Road when he noticed that the registration tags of a convertible car parked on the side of the road were expired. He pulled up behind the car and walked to the car on foot to notify its three occupants. The car's convertible roof was down, and, while standing beside the car, Deputy Keith noticed several open containers in plain view and asked the occupants for identification. Upon a subsequent search of the vehicle, he found a "socket" tool that had been used to smoke marijuana and several small bags containing marijuana in a backpack. Deputy Keith radioed for drug recognition officers to assist at the scene. When the officers arrived they conducted several field sobriety tests that indicated that the driver, Levin, had been smoking marijuana. When Deputy Keith asked Levin if he had been smoking marijuana, Levin responded

that he had not. At some point, Deputy Keith stated that he knew Levin had been smoking marijuana, to which Levin responded he had.

¶ 3 Levin was cited for possession or use of marijuana with a prior conviction, in violation of Utah Code section 58–37–8(2)(a)(i) (1998), and for possession of drug paraphernalia, in violation of Utah Code section 58–37a–5(1) (1998). He pleaded not guilty to both counts.

¶ 4 Before trial, Levin moved to suppress statements he made at the time of his citation, claiming that Deputy Keith had subjected him to custodial interrogation without informing him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court denied the motion on May 22, 2002.

¶ 5 Prior to trial, Levin also moved to exclude evidence of a prior conviction for possession or use of marijuana and moved to bifurcate the matter of his prior conviction. The trial court granted both motions on May 14, 2002. However, during his direct examination at trial, Levin stated that "I don't smoke marijuana, and I haven't smoked marijuana." Before cross-examination, the State asked the court to rule on the admissibility of Levin's prior drug conviction in light of the statements he had made during direct examination. The court concluded that Levin's statements had "opened the door" and permitted the State to admit evidence of Levin's prior drug conviction under rule 609 of the Utah Rules of Evidence. At the conclusion of evidence, the judge read an instruction explaining that the jury could only consider the prior conviction evidence for assessing credibility.

¶ 6 The jury convicted Levin on both counts. On appeal, Levin challenges the trial court's denial of his motion to suppress and the court's ruling to permit evidence of prior crimes.

## STANDARDS OF REVIEW

█ ¶ 7 " 'In reviewing the trial court's denial of [a defendant's] motion to suppress, we examine the underlying factual findings for clear error, and review the trial court's conclusions of law based thereon for correct-

ness.' " *State v. Allred*, 2002 UT App 291,-¶ 8, 55 P.3d 1158 (quoting *State v. Hayes*, 860 P.2d 968, 971 (Utah Ct.App.1993)). However, because the determination of custody is fact-sensitive and " 'the facts to which the legal rule is to be applied are so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out,' " we recognize that the trial court has a degree of discretion "unless such determination exceeds established legal boundaries." *State v. Teuscher*, 883 P.2d 922, 929 (Utah Ct.App.1994) (quoting *State v. Pena*, 869 P.2d 932, 939 (Utah 1994)) (other citations omitted).

█ ¶ 8 With regard to the court's determination to admit evidence of Levin's prior conviction, we review the trial court's conclusion for abuse of discretion. *See Jensen v. Intermountain Power Agency*, 1999 UT 10,-¶ 12, 977 P.2d 474 ("[I]n reviewing a trial court's decision to admit or exclude evidence, we allow for broad discretion.").

## ANALYSIS

### I. Motion to Suppress

#### A. Trial Court's Findings of Fact

¶ 9 The trial court entered the following findings of fact in its May 22, 2002 order denying Levin's motion to suppress:

1. On May 2, 2001, Deputy Wayne Keith was patrolling Provo Dike Road that is located just south of the Provo Boat Harbor. This is a public road.

2. Deputy Keith observed a convertible vehicle that was parked on the side of the road. Deputy Keith noticed that the registration was expired on the vehicle and subsequently stopped his vehicle behind the parked convertible. Deputy Keith did not activate his overhead lights or his siren when he parked behind the vehicle. Furthermore, he did not block their vehicle from moving or leaving with the position of his vehicle.

3. Deputy Keith observed three occupants sitting in the car.

4. Deputy Keith approached the vehicle on foot and observed several open containers of alcohol in plain view in both the

front and rear area of the passenger compartment of the vehicle.

5. Deputy Keith asked for the three passenger's [sic] identification. Defendant was determined to be the individual sitting in the driver's seat.

6. Deputy Keith asked the occupants to step out of the vehicle and [explained] that he was going to search for more open containers.

7. Deputy Keith began searching the vehicle for open containers. In the center console, which was large enough to house an open container, Deputy Keith smelled the odor of marijuana and observed a metal "socket" that was fashioned into a pipe. The socket smelled of marijuana and appeared to have marijuana residue in the "pipe."

8. In a back-pack in the back seat, Deputy Keith found three plastic bags that were determined to contain marijuana. The rear[-] seated passenger stated it was his back-pack.

9. Deputy Keith asked Defendant about the socket that was found in the center console between the driver's and passenger seat[s]. Defendant stated he did not know it was there and insisted that he had not smoked any marijuana. At this time, Defendant was not under arrest nor was he handcuffed.

10. Within a short time, two other officers arrived. Because Defendant was in the driver's seat, Defendant was asked to perform some field sobriety tests.

11. The officer that conducted the field sobriety tests on Defendant, Deputy Todd Orton, was a certified Drug Recognition Expert. After the conclusion of the field sobriety tests, Deputy Orton believed Defendant was possibly under the influence of marijuana; however, it was felt that he was not impaired to the point that he could not safely operate a motor vehicle.

12. Deputy Orton informed Deputy Keith of his belief that the Defendant was possibly under the influence of marijuana but that he was not impaired to the point that he could not safely operate a motor vehicle.

13. Deputy Keith then told Defendant that he "knew he had smoked marijuana." This was not phrased in the form of a question. Furthermore, no evidence was elicited on cross-examination that Deputy Keith made this comment while confronting the Defendant or while "in his face." No evidence was attained that was anything more than a statement casually made to Defendant.

14. Up to this point, Defendant had maintained a lack of knowledge of the marijuana or the pipe. However, Defendant then told Deputy Keith that he had only taken a couple of hits of marijuana while at that location. He stated that both he and the back seated passenger had smoked out of a pipe.

15. Deputy Keith was surprised when Defendant stated he had smoked marijuana while at that location. Deputy Keith testified that he did not expect Defendant to say anything in response. Deputy Keith did not even ask a question and was surprised when Defendant responded with an incriminating statement.

16. Defendant, along with the other occupants of the vehicle, was never arrested, never handcuffed and was merely given a citation. Defendant was then allowed to drive the vehicle away from the location with his friends as passengers.

Based on these facts, the trial court concluded that Levin was neither in custody nor subject to interrogation such that Deputy Keith was required to provide him with a *Miranda* warning. In his appeal, Levin does not dispute these factual findings; rather, he claims that the court "erred in its conclusion that [he] was not in custody or subject to interrogation for *Miranda* purposes."

### B. Miranda Warnings

¶ 10 Police officers must provide *Miranda* warnings prior to subjecting a suspect to a "custodial interrogation," which is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## 1. Interrogation

¶ 11 As an initial matter, we disagree with the trial court's determination that Keith's questions did not result in an "interrogation" for purposes of *Miranda.* The Supreme Court has defined "interrogation" to comprise "not only ... express questioning, but also ... any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Thus, statements by police "to which no response from the respondent [are] invited" do not constitute an "interrogation." *Id.* at 302, 100 S.Ct. 1682. However, a "lengthy harangue in the presence of the suspect" may amount to an interrogation. *Id.* at 303, 100 S.Ct. 1682. Although Keith's statement to Levin may not have been punctuated with a question mark, it was made in the course of express questioning to which Levin had already responded. Given this context, Keith's assertion was a type Keith "should know [was] reasonably likely to elicit an incriminating response" from Levin. *Id.* at 302, 100 S.Ct. 1682. Thus, we must conclude that the statement was the "functional equivalent" to express questioning and, therefore, an "interrogation." *Id.* at 301, 100 S.Ct. 1682.

## 2. Custody

¶ 12 Nonetheless, we agree with the trial court's determination that Levin was not in "custody" at the time the interview took place. *Miranda* does not require law enforcement officers to warn suspects before interrogation in all cases. Rather, *Miranda* requirements only apply when the suspect is subject to " 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam) (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)) (other quotations and citation omitted). Whether events surrounding an interrogation amount to custody depends on the "objective circumstances" and "not on the subjective views harbored by either the interrogating officer[ ] or the person being questioned." *Id.* at 323, 114 S.Ct. 1526.

¶ 13 Under Utah law, we determine whether a suspect was in custody with reference to four factors: " '(1) the site of interrogation; (2) whether the investigation focused on the accused; (3) whether objective indicia of arrest were present; and (4) the length and form of interrogation.' " *State v. Mirquet,* 914 P.2d 1144, 1147 (Utah 1996) (quoting *Salt Lake City v. Carner,* 664 P.2d 1168, 1171 (Utah 1983)). We emphasize that " 'in deciding the custody issue, the totality of the circumstances is relevant, and no one factor is dispositive.' " *State v. Worthington,* 970 P.2d 714, 716 (Utah Ct.App. 1998) (quoting *Stansbury,* 511 U.S. at 321, 114 S.Ct. 1526) (alteration omitted).

¶ 14 We begin by listing those factors that suggest Levin was not in custody. First, the objective indicia of arrest are missing: there were no "readied handcuffs, locked doors or drawn guns." *Carner,* 664 P.2d at 1171. Second, the site of the interrogation was a public road. Traffic stops on a public road, even if in a relatively remote location, generally do not create the type of situation in which "the motorist feels completely at the mercy of the police." *Berkemer v. McCarty,* 468 U.S. 420, 438, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Also, the open setting of the road, unlike the confines of a police station or cruiser, reasonably "diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse." *Id.*

¶ 15 We now turn to those factors that could sustain a determination that Levin was in custody. Levin's argument focuses primarily on the duration of the encounter, which he describes at one point as lasting an hour and at another point as lasting an hour and a half. Generally, traffic stops are afforded a presumption of validity because they are "temporary and brief" in nature and the suspect knows that "in the end he will most likely be allowed to continue on his way." *Id.* at 437, 104 S.Ct. 3138. Here, however, a stop for over an hour is more extensive than a routine traffic stop and, thereby, raises some concern that it may be intrusive enough to constitute custody.

¶ 16 In determining at what point a stop begins to assume the character of an arrest, we note that the Supreme Court has rejected bright-line time limits to police stops: " '[W]e question the wisdom of a rigid time limitation. Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation.' " *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (quoting *United States v. Place,* 462 U.S. 696, 709 n. 10, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). We too are reluctant to conclude that the mere fact that a stop lasted over an hour is conclusive of custody.

¶ 17 Rather, we consider the reasonableness of the stop in light of the totality of the circumstances. We have recognized that investigative stops involving several suspects must be afforded additional time. *See State v. Allred,* 2002 UT App 291,¶ 13, 55 P.3d 1158 (questioning six suspects for up to forty minutes does not constitute custody). Similarly, it is reasonable for a stop to require over an hour when an officer calls support personnel who must travel to the scene. *See State v. Garbutt,* 173 Vt. 277, 790 A.2d 444, 449–50 (2001) (holding that detaining suspect for seventy-five minutes while awaiting support personnel did not constitute custody); *People v. Forster,* 29 Cal.App.4th 1746, 35 Cal. Rptr.2d 705, 709–10 (1994) (holding that detaining suspect for "a little more than an hour" while awaiting support personnel did not constitute custody). Here, although Levin was detained for over an hour, that amount of time was not unreasonable given the circumstances. The officers were dealing with three suspects at the scene and had to perform a number of tasks, which included (1) collecting identification from each suspect, (2) investigating and collecting evidence regarding a possible open container violation, (3) investigating and collecting evidence regarding possible drug possession and use, (4) summoning and awaiting support officers trained in drug recognition, (5) performing field sobriety tests on each suspect for alcohol and drug consumption, and (6) preparing citations. Taken together, a stop lasting over an hour under these circumstances is not unreasonable.

¶ 18 Levin next argues that he was in "custody" because he was the focus of Deputy Keith's investigation and because Deputy Keith directly accused him of using drugs. We recognize that "a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question of custody for purposes of *Miranda.*" *Stansbury v. California,* 511 U.S. 318, 324, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam). However, when a police officer expresses his suspicions to a suspect, "[t]hose beliefs are relevant only to the extent that they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Id.* at 325, 114 S.Ct. 1526 (quotations and citation omitted). Thus, "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue. . . . The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case." *Id.*

¶ 19 Here, then, we must determine whether Deputy Keith's assertion that he knew Levin had used drugs would cause a reasonable person in Levin's position to feel his "freedom of action" had been significantly limited. *See id.* On this issue, the facts of this case are largely analogous to those of *State v. Strausberg,* 895 P.2d 831 (Utah Ct. App.1995). There, the defendant fled from the scene of an accident he had caused, and police used descriptions provided by witnesses to later identify and stop him. *See id.* at 832. After observing evidence of the collision on the vehicle, a police officer asked the defendant if he had been in an accident that night. *See id.* The defendant denied any involvement. *See id.* Without giving a *Miranda* warning, the officer explained that witnesses had identified a similar vehicle at the scene of the accident, and, confronted with this information, the driver made incriminating statements. *See id.*

¶ 20 In determining whether the defendant was in custody, the *Strausberg* court held that " '[b]ecause the determination of custody for *Miranda* purposes is fact sensitive, we

accord a measure of discretion to the trial court's determination unless such determination exceeds established legal boundaries.' " *Id.* at 834 n. 5 (quoting *State v. Teuscher,* 883 P.2d 922, 929 (Utah Ct.App.1994)). The court then concluded that the trial court did not abuse its discretion in concluding the defendant was not in custody because the "question was not coercive and was merely investigatory in nature." *Id.* at 835.

¶ 21 We agree that the question of whether a police statement is so accusatory as to coerce a suspect into an unwanted confession is a question of degree for which the trial court is best suited to decide.[1] Therefore, in determining whether Deputy Keith's statement was so accusatory that it would "affect how a reasonable person ... would gauge the breadth of his or her freedom of action," *Stansbury,* 511 U.S. at 325, 114 S.Ct. 1526 (quotations and citations omitted), we afford the trial court considerable discretion.

¶ 22 In this case, the trial court did not abuse its discretion in determining that "although the statement made by Deputy Keith was accusatory, it was not overly accusatory." Such a conclusion does not "exceed[ ] established legal boundaries," particularly because the *Strausberg* court reached a similar conclusion with similar facts. 895 P.2d at 834–35. As such, we rely on the trial court's determination that Deputy Keith's statement was not so accusatory as to coerce Levin into making an incriminating statement.

¶ 23 Based on these considerations, we conclude that the totality of the circumstances in this case weigh against a determination that Levin was in "custody" for *Miranda* purposes. Accordingly, we affirm the trial court's denial of Levin's motion to suppress.

## II. Admissibility of Prior Conviction Evidence

¶ 24 Prior to trial, Levin also moved to exclude evidence of a prior conviction for possession or use of marijuana and moved to bifurcate the matter of the prior conviction. The trial court granted both motions on May 14, 2002. However, during the May 22, 2002 trial, the following exchange took place during Levin's direct examination:

Q. Okay. Did [Deputy Keith] ask you any other questions at that point?

A. I don't remember.

Q. Did he ask you if you had been smoking marijuana..

A. He did.

Q ... at that point?

A. Yes, he did. He asked me if I had been smoking, if it was mine, and I told him it's not mine, and I don't smoke marijuana, and I haven't smoked marijuana.

Before the State began its cross examination, it asked the court to allow it to question Levin regarding his prior drug conviction. After a brief hearing, the trial court determined that Levin had "opened the door" to such evidence when he "misled the jury and left the jury with a potential false impression" by testifying that "I don't smoke marijuana, and I haven't smoked marijuana." On cross-examination, Levin admitted his prior drug conviction, and, at the conclusion of evidence, the court instructed the jury to consider the prior conviction evidence only for the purpose of weighing credibility.

¶ 25 Evidence of a prior conviction for a crime punishable in excess of one year is admissible under Rule 609 of the Utah Rules of Evidence "if the court determines that the probative value of admitting this evidence outweighs it prejudicial effect to the accused." Utah R. Evid. 609(a)(1). Rule 403 also applies to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Utah R. Evid. 403. As mentioned above, we review the trial court's ruling on these evidentiary matters only for abuse of discretion. *See*

---

1. The trial court is in a superior position to weight fact-intensive considerations because "it is before that court that the witnesses and parties appear and the evidence is adduced." *State v. Pena,* 869 P.2d 932, 936 (Utah 1994). Thus, "[t]he judge of that court is therefore considered to be in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record." *Id.*

*Jensen v. Intermountain Power Agency,* 1999 UT 10, ¶ 12, 977 P.2d 474.

¶ 26 When a defendant testifies that he has never used drugs, a trial court does not abuse its discretion when it allows the prosecution to present evidence of the defendant's prior conviction for drug possession. *See Gee v. Pride,* 992 F.2d 159, 161–62 (8th Cir.1993) (admitting evidence of prior conviction for drug possession after defendant testified he had never used PCP) (construing Fed.R.Evid. 609(a)). Similarly, when a defendant seeks to mischaracterize a prior conviction, the court does not abuse its discretion in allowing the State to use prior conviction evidence "to directly contradict the defendant's previous inaccurate testimony." *State v. Tucker,* 800 P.2d 819, 824 (Utah Ct.App.1990) (admitting evidence of cocaine use relating to prior attempted forgery conviction); *see also United States v. Valencia,* 61 F.3d 616, 619 (8th Cir.1995) (admitting details of past drug conviction when defendant "attempted to minimize his guilt regarding the prior conviction") (construing Fed.R.Evid. 609(a)).

¶ 27 In the present case, the court did not abuse its discretion in determining that Levin's statements that "I don't smoke marijuana" and "I haven't smoked marijuana" could mislead jurors. Nor did it abuse its discretion when it concluded that the prior conviction evidence would have substantial probative value in clarifying the record and remedying any mischaracterizations. Finally, the court limited any improper prejudicial effect by instructing the jury to consider the evidence only for purposes of credibility.

## CONCLUSION

¶ 28 We conclude that the trial court did not err in denying Levin's motion to suppress and did not abuse its discretion in admitting evidence of Levin's prior drug conviction at trial. Accordingly, we affirm.

¶ 29 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge, and WILLIAM A. THORNE JR., Judge.