**STATE of Utah, Plaintiff and Appellee,**

v.

**Ralph LEVIN, Defendant and Appellant.**

No. 20030336–CA.

Court of Appeals of Utah.

March 1, 2007.

---

Margaret P. Lindsay, Orem, for Appellant.

Carlyle Kay Bryson and Nyal C. Bodily, Utah County Attorney Office, Provo, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

### OPINION

BILLINGS, Judge:

¶ 1 Defendant Ralph Levin appeals his convictions for possession or use of marijuana with a prior conviction, a class A misdemeanor, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (1998), and possession of drug paraphernalia, a class B misdemeanor, *see id.* § 58–37a–5(1) (1998). This is the second time this court has considered this case. *See State v. Levin*, 2004 UT App 396, 101 P.3d 846 (*Levin I*). Levin appealed our prior decision to the Utah Supreme Court. *See State v. Levin*, 2006 UT 50, 144 P.3d 1096 (*Levin II*). The supreme court held that in *Levin I* we applied the improper standard of review as to the trial court's determination of custodial interrogation. *See id.* at ¶ 46. Thus, we examine for a second time Levin's

claim that he was subjected to custodial interrogation at the time he made incriminating statements and that the trial court erred in denying his motion to suppress such statements.[1] We affirm.

### BACKGROUND

¶ 2 Both this court and the supreme court previously set forth the relevant facts, and thus, we simply include the supreme court's recitation here.[2]

¶ 3 "Levin's convictions for drug offenses are based on evidence gathered during an approximately one-and-one-half hour traffic stop on the Provo Dike Road in a rural area near Utah Lake. Deputy Wayne Keith of the Utah County Sheriff's Office was on patrol when he noticed a convertible bearing expired registration tags parked on the side of the road. Three occupants were sitting in the convertible with the roof down. Without activating his lights or siren, Deputy Keith parked behind the convertible. He approached on foot and saw several open containers of alcohol in plain view inside the convertible." *Levin II*, 2006 UT 50, ¶ 7, 144 P.3d 1096.

¶ 4 "Deputy Keith asked the convertible's occupants for identification. Levin was in the driver's seat, Michael Winger was a passenger in the front seat, and Richard Johnson was sitting in the backseat. Deputy Keith had all three men step out of the vehicle and notified them that he was going to search for more open containers. [Due to Winger's physical disability, Deputy Keith 'recollect[ed] that he had some trouble getting [Winger] out of the vehicle.'] [Deputy Keith's] search of the vehicle's center console

---

1. In *State v. Levin*, 2004 UT App 396, 101 P.3d 846 (*Levin I*), Levin also appealed the trial court's decision to admit evidence as to Levin's prior conviction. *See id.* at ¶ 8. We upheld the trial court's decision to admit such evidence. *See id.* at ¶¶ 24–27. Levin did not appeal this issue to the supreme court, *see State v. Levin*, 2006 UT 50, ¶ 14, 144 P.2d 1096 (*Levin II*), and we do not readdress it here.

2. The supreme court noted that because it was "concerned only with defining the appropriate standard of review, [it was] limit[ing its] discussion of the facts in this case." *Levin II*, 2006 UT

50 at ¶ 6, 144 P.3d 1096. However, upon review of the supreme court's recitation of the facts, our previous recitation in *Levin I*, 2004 UT App 396 at ¶¶ 2–6, 9, 101 P.3d 846, and the record, we find that the supreme court's recitation is, as our following analysis reveals, sufficient, and we have only supplemented the recitation where necessary.

Notably, although we quote directly from the Utah Supreme Court's recitation in *Levin II*, we deviate from this court's usual line and indentation format in an effort to aid readability.

uncovered an odor of marijuana and a metal 'socket' tool that had been fashioned into a pipe, which appeared to contain burnt and unburnt marijuana. Deputy Keith also found several small bags of marijuana in a backpack claimed by Johnson." *Id.* at ¶ 8.

¶ 5 "There is some dispute over the precise chronology of the following events, but the record establishes that Deputy Keith called in two deputies who were certified drug recognition experts. Because the vehicle belonged to Levin and he had been sitting in the driver's seat, Deputy Keith pulled Levin aside and personally subjected him to a sobriety test designed to identify alcohol impairment. He passed. The drug recognition experts then subjected Levin to additional field sobriety tests. Those officers determined that Levin had a fast pulse rate and a lack of convergence of the eyes. They informed Deputy Keith that they believed Levin was under the influence of marijuana. At some point, either before or after these tests, Deputy Keith asked Levin at least once about the socket, and Levin asserted that he knew nothing about it and had not smoked marijuana. Deputy Keith also patted Levin down but found no marijuana and no scent of marijuana on him." *Id.* at ¶ 9.

¶ 6 "However, after the drug recognition experts presented their conclusions to Deputy Keith, Deputy Keith pulled Levin aside and stated: 'There's no doubt in my mind that you've been smoking marijuana.' Deputy Keith's accusation was not phrased in the form of a question, and Deputy Keith was not 'in Levin's face.' Deputy Keith testified that he did not expect a response because Levin had already denied using marijuana. Nevertheless, Levin answered by saying that 'he had taken a couple of hits' with Richard Johnson but that Michael Winger had not used any marijuana. He also added that they had smoked out of a pipe that the officers had not located. At no time was Levin formally arrested, handcuffed, or given a Miranda warning, although he was issued a citation." *Id.* at ¶ 10.

¶ 7 "In addition to the investigation of Levin, the officers questioned the two passengers. The officers briefly questioned Winger about smoking marijuana. They read Johnson his Miranda rights and questioned him about the marijuana found in his backpack. Johnson admitted that he had been smoking with Levin, but later said that he had smoked the marijuana alone. When the officers had completed their investigation, they allowed Levin and his passengers to leave in the convertible. As the convertible started to drive away, one of the officers spotted a pipe located directly under the convertible. The officers stopped the convertible, and Deputy Keith asked if this was the pipe they had used to smoke. Johnson stated that it was." *Id.* at ¶ 11.

¶ 8 "Levin was later charged with possession and use of marijuana, possession of drug paraphernalia, and with having an open container in a vehicle. Levin pleaded no contest to the open container charge. With regard to the drug offenses, he pleaded not guilty and then moved to suppress the incriminating statements he had made to Deputy Keith, arguing that despite being subjected to custodial interrogation, he had not been given the required Miranda warning. The trial court denied the motion. It determined that Levin had not been in custody or subject to interrogation. At the commencement of trial, Levin renewed his motion, which the trial court again denied. Following the trial, a jury found Levin guilty of both possession of marijuana with a prior conviction and possession of drug paraphernalia." *Levin II,* 2006 UT 50, ¶ 12, 144 P.3d 1096.

¶ 9 Levin appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 10 The only issue for our reconsideration on appeal is whether the trial court properly determined that Levin was not subject to custodial interrogation. As the court in *Levin II* recently instructed, "nondeferential appellate review of custodial interrogation determinations is mandated[,] ... [and] we review ... these determinations for correctness." *Id.* at ¶¶ 42–43.

## ANALYSIS

■ ¶ 11 Under the Fifth Amendment of the United States Constitution, "[n]o person ... shall be compelled in any criminal

case to be a witness against himself." U.S. Const. amend. V. To protect a person's constitutional right against compulsory self incrimination, *see id.,* courts prohibit the admission of statements made to police in the course of custodial interrogations if police fail to deliver Miranda warnings. *See Levin II,* 2006 UT 50 at ¶ 33, 144 P.3d 1096 (citing *Rhode Island v. Innis,* 446 U.S. 291, 297, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).

> Generally, custodial interrogation consists of questioning or use of other techniques of persuasion "initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Thus, custodial interrogation occurs where there is both (1) custody or other significant deprivation of a suspect's freedom and (2) interrogation.

*Id.* at ¶ 34 (quoting *Innis,* 446 U.S. at 298–99, 100 S.Ct. 1682) (additional quotations and citation omitted). Because both custody and interrogation must exist to warrant Miranda warnings, the absence of one element makes it unnecessary for the court to address the existence of the other. *See id.* Because we conclude that Levin was not in custody when he made the incriminating statement, we do not reach the issue of whether Levin was interrogated. *See id.*

▆▆ ¶ 12 Generally speaking, a person is in custody for purposes of Miranda when the person's "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam)); *State v. Mirquet,* 914 P.2d 1144, 1146 (Utah 1996). "More specifically, Miranda warnings are required whenever the circumstances of an interrogation are such that they 'exert[ ] upon [the] detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.'" *Mirquet,* 914 P.2d at

1146 (alterations in original) (quoting *Berkemer,* 468 U.S. at 437, 104 S.Ct. 3138).

▆ ¶ 13 In making custody determinations, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer,* 468 U.S. at 442, 104 S.Ct. 3138. That is, a custody determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

▆ ¶ 14 The Utah Supreme Court has established four factors for "determining whether an accused who has not been formally arrested is in custody. They are: (1) the site of interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation." [3] *Salt Lake City v. Carner,* 664 P.2d 1168, 1171 (Utah 1983); *see also Levin II,* 2006 UT 50, ¶ 36, 144 P.3d 1096 (enumerating the four *Carner* factors); *Mirquet,* 914 P.2d at 1147 (reaffirming the four factors). Importantly, "no one factor is dispositive" and "in deciding the custody issue, the totality of the circumstances is relevant." *State v. Worthington,* 970 P.2d 714, 716 (Utah Ct.App. 1998) (quotations and citation omitted).

▆ ¶ 15 Applying the four factors here, we first note that "no [objective] indicia of arrest such as readied handcuffs, locked doors[,] or drawn guns were present." *Carner,* 664 P.2d at 1171. In fact, Deputy Keith never activated his lights or siren, he approached the parked car on foot to investigate expired registration tags, and it was only when the deputy saw open containers in the vehicle that he asked all three occupants to exit the vehicle so he could search for additional open containers.

¶ 16 Second, we point out that the site of interrogation was a public road. Generally, this fact will weigh in favor of a non-custody determination because "[the] exposure to public view both reduces the ability of an

---

**3.** As previously noted, we do not determine the issue of interrogation. But for purposes of our custody analysis we assume that interrogation occurred.

unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse." *Berkemer*, 468 U.S. at 438, 104 S.Ct. 3138; *see also id.* (noting that because "the typical traffic stop is public, at least to some degree" the "motorist [does not] feel completely at the mercy of the police" and this fact mitigates against a determination of custodial interrogation requiring Miranda warnings); *United States v. Jones*, 187 F.3d 210, 218 (1st Cir.1999) ("[A] public highway is a neutral setting that police officers are not in a position to dominate as they are, for example, an interrogation room at a jailhouse."). However, we recognize that here the road was in a rural area. As noted by this court in *State v. Mirquet*, 844 P.2d 995 (Utah Ct. App.1992), "[t]he defendant was pulled over alongside an interstate highway in rural Utah. He was thus subject to a more police dominated setting than a citizen pulled over in an urban area where passing motorists are going slower and pedestrians are present." *Id.* at 999. But here the facts do not demonstrate any coercive questioning by the officers, and in fact, Levin was never arrested but merely given a citation and allowed to leave in his car with his two passengers.

¶ 17 Third, turning to the length and duration of the interrogation, we acknowledge that one feature of traffic stops that mitigate against the need for Miranda warnings is that "a traffic stop is presumptively temporary and brief." *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). "The vast majority of roadside detentions last only a few minutes." *Id.* Here, the stop notably lasted over an hour. We conclude, however, that the length of the stop was a reasonable amount of time for the officers to pursue their investigation of driving under the influence and possession of marijuana and drug paraphernalia. Specifically: three suspects were involved, *see State v. Allred*, 2002 UT App 291, ¶ 13, 55 P.3d 1158 (observing that the questioning of six suspects for up to forty minutes did not weigh in favor of a custody determination); there was noted difficulty getting all three suspects out of the car due to one suspect's physical disability; Deputy Keith conducted an open container search of the vehicle involving a number of containers and a search of one suspect's belongings; Deputy Keith called two drug recognition experts for assistance; the interrogation site was in a rural area, making it unlikely the drug recognition experts arrived immediately, *see People v. Forster*, 29 Cal.App.4th 1746, 35 Cal.Rptr.2d 705, 709–10 (1994) (noting that although detention of "a little more than an hour" was "a relatively long one," that amount of time was reasonable because it was time spent awaiting for requisite officer to arrive); *State v. Garbutt*, 173 Vt. 277, 790 A.2d 444, 449–50 (2001) (determining that seventy-five minute detention, "although longer than the average roadside stop[,] was . . . necessary" in that it was the time it took for requisite officers to arrive); Deputy Keith performed a field sobriety test on Levin; the officers performed drug recognition tests on Levin; the officers questioned the other two suspects; the police prepared citations; and, after allowing the suspects to leave, the police stopped the car a second time because they observed a pipe where the car once stood. In sum, the length of the stop was reasonable considering the goals and circumstances of the investigation. Nothing in the record indicates that the length of the stop was indicative of coercion. Most importantly, the portion of the stop that involved Levin's actual interrogation was quite brief.

¶ 18 Finally, we consider the fourth factor—the form of the interrogation and "whether the investigation focused on the accused." *Salt Lake City v. Carner*, 664 P.2d 1168, 1171 (Utah 1983). Here, the investigation clearly involved all three suspects in that the police questioned all three suspects and even searched one of the suspect's belongings. The focus of the investigation, however, appears to have been primarily on Levin. For the most part, this focus seems to have resulted from the fact that Levin was the driver of the vehicle. That is, because Levin was the driver of the vehicle, a determination as to his impairment was most critical and was the reason he, and not the other two suspects, were subjected to field sobriety tests. *See id.* (noting that there are certain crimes, such as driving under the influence,

where it is "not the identity but the fact of commission [that] is questioned"). But, importantly, after the officers informed Deputy Keith that Levin was likely under the influence of marijuana and Deputy Keith told Levin, "[t]here's no doubt in my mind that you've been smoking marijuana," the focus of the investigation arguably turned from whether a crime had been committed to accusing Levin of committing that crime. *See id.* (stating that in such cases as driving under the influence, "an investigation cannot become accusatory [i.e., focus on the accused] until there is a likelihood that a crime has been committed"). Although "[t]he weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case," *Stansbury v. California,* 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), the Utah Supreme Court has pointed out that when investigatory questioning becomes accusatory, "the existence of custody is likely because this often indicates to the defendant that he or she is not free to leave," *Levin II,* 2006 UT 50, ¶ 36, 144 P.3d 1096. However, here the accusation came at the end of the encounter, the accusation was brief, and Levin was allowed to leave soon thereafter. Furthermore, the other three factors indicate an absence of custody, and the court has emphasized that these factors may "outweigh the single factor that the investigation had focused on [the defen-

dant]." *State v. Brandley,* 972 P.2d 78, 82 (Utah Ct.App.1998) (deciding that there was no custody because the absence of other three factors outweighed the fact that the investigation focused on the defendant). That is, "[a]lthough many encounters between citizens and police, especially in the context of a traffic stop, can give rise to accusatory-type questioning, that factor alone does not dispositively determine whether a person is in custody." *State v. Mirquet,* 914 P.2d 1144, 1148 (Utah 1996). As the supreme court has previously noted, "[t]he necessary coercive environment cannot be established by accusatory questioning alone." *Id.*

## CONCLUSION

¶ 19 We conclude that Levin was not in custody when he made incriminating statements. The trial court therefore did not err in denying Levin's motion to suppress such statements. Accordingly, we affirm.

¶ 20 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.